BARNEY, (CAMPBELL v.)　See Case No. 2,354.

BARNEY, (CATEAUX v.)　See Case No. 2,511.

BARNEY, (COX v.)　See Case No. 3,300.

BARNEY, (DALE v.)　See Case No. 3,541.

## Case No. 1,030.

### BARNEY v. The D. R. MARTIN.

[11 Blatchf. 233;[1] 18 Int. Rev. Rec. 55; 5 Chi. Leg. News, 535; 8 Alb. Law J. 54; 8 Amer. Law Rev. 169; 21 Pittsbg. Leg. J. 10.]

Circuit Court, E. D. New York. July 2, 1873.[2]

CARRIERS—EJECTMENT OF PASSENGER — TRANSACTION OF PRIVATE BUSINESS ON PUBLIC CONVEYANCE.

1. A person who had, on board of a steamboat, which was a common carrier, pursued,

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Appeal dismissed by supreme court in 91 U. S. 365.]

against the remonstrance of the carrier, the business of an express agent, on board of such steamboat, came on board of her again for that purpose, having purchased a ticket for passage, and refused to desist from such business, when requested by officers of the boat, and was removed from the boat, by such officers, without unnecessary force: *Held*, that the removal was justifiable.

2. A common carrier is not bound to permit a business which interferes with his own interests to be transacted on his vehicles.

3. A carrier who waives his rights, in that respect, in regard to one person, is not bound to waive them in regard to another person.

4. The sale or leasing to individuals, by a carrier, of rights to transact on his vehicle such business as may be done thereon, and the exclusion of others therefrom, are reasonable regulations, which the courts are bound to enforce.

[5. Cited in The T. A. Goddard, 12 Fed. 184, to the point that a carrier by water is responsible for due care and diligence as to goods received on board his vessel independently of any bill of lading.]

[Appeal from the district court of the United States for the eastern district of New York.

[In admiralty. Libel by David F. Barney against the steamboat D. R. Martin, her tackle, etc., (the Oyster Bay & Huntington Steamboat Company, claimants,) for damages for the ejection of the libellant. Decree for libellant (unreported) for $500. Claimant appeals. Reversed. Subsequently, libellant appealed to the supreme court, but his appeal was dismissed for want of jurisdiction. The D. R. Martin, 91 U. S. 365.]

J. M. Guiteau, for libellant.

Thomas Young, for claimants.

HUNT, Circuit Justice. On the trial before the district judge, the libellant recovered the sum of $1,000 as his damages, for ejecting him from the boat, on the morning of October 23, 1871. On an application subsequently made to him, the district judge reduced the recovery to the sum of $500. A careful perusal of all the testimony satisfies me that the libellant was pursuing his business as an express agent on board the boat; that he persisted in it against the remonstrance of the claimants; and that it was to prevent the transaction of that business by him on board the boat, that he was ejected therefrom by the claimants.

The steamboat company owing this vessel were common carriers between Huntington and New York. They were bound to transport every passenger presenting himself for transportation who was in a fit condition to travel by such conveyance. They were bound also to carry all freight presented to them in a reasonable time before their hours of starting. The capacity of their accommodation is the only limit to their obligation. A public conveyance of this character is not, however, intended as a place for the transaction of the business of the passengers. The suitable carriage of persons or property is the only duty of the common carrier. A steamboat company or a railroad company is not

bound to furnish travelling conveyances for those who wish to engage on their vehicles in the business of selling books, papers, or articles of food, or in the business of receiving and distributing parcels or baggage, nor to permit the transaction of this business in their vehicles when it interferes with their own interests. If a profit may arise from such business, the benefit of it belongs to the company, and they are entitled to the exclusive use of their cars for such purposes. This seems to be clear both upon principle and authority. Story, Bailm. § 591a; Jenckes v. Coleman, [Case No. 7,258;] Burgess v. Clements, 4 Maule & S. 306; Fell v. Knight, 8 Mees. & W. 269; Com. v. Powers, 1 Amer. Ry. Cas. 389. These cases show that the principle thus laid down is true as a general rule.

The case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 356, shows that it is especially applicable to those seeking to do an express business on such conveyances. It is there held, in substance, that the carrier is liable to the owner for all the goods shipped on a public conveyance by an express company, without regard to any contract to the contrary between the carrier and the express company. Although they may have no custody or control of the goods, they are liable to the owner in case of loss, if they allow them to be brought on board. It is the simplest justice that they should be permitted to protect themselves by preventing their being brought on board by those having them in charge. This rule would not exclude the transmission as freight of any goods or property, which the owners or agents should choose to place under the care and control of the carrier.

That persons other than the libellant carried a carpet bag without charge, or that such bag occasionally contained articles forwarded by a neighbor or procured for a friend, does not affect the carrier's right. The cases where this was proved to have been done were rare and exceptional, and do not appear to have been known to the carrier, nor does it appear that any compensation was paid to the agent. They were neighborly and friendly services, such as people in the country are accustomed to render for each other.

But, if the services and the business had been precisely like that of the libellant, the rule would have been the same. The rights of the carrier in respect to A. are not gone or impaired for the reason that he waives his rights in respect to B., especially if A. be notified that the rights are insisted upon as to him. If Mr. Prime was permitted to carry a bag without charge on the defendants' boat, or to do a limited express business thereon, this gives the libellant no right to do such business, when notified by the carrier that he must refrain from it. A carrier, like all others, may bestow favor where he chooses. Rights, not favors, are the subject of demand by all parties indiscriminately.

The incidental benefit arising from the transaction of such business as may be done on board a boat or a car belong to the carrier, and he can allow the privilege to one and exclude it from another at his pleasure. A steamboat company or a railroad company may well allow an individual to open a restaurant or a bar on their conveyance, or to do the business of boot blacking, or of peddling books and papers. This individual is under their control, subject to their regulations, and the business interferes in no respect with the orderly management of the vehicle. But, if every one that thinks fit can enter upon the performance of these duties, the control of the vehicle and the good management would soon be at an end.

The cars or boats are that of the carrier, and I think exclusively are for this purpose. The sale or leasing of these rights to individuals and the exclusion of others therefrom come under the head of reasonable regulations, which the courts are bound to enforce. The right of transportation, which belongs to all who desire it, does not carry with it a right of traffic or business.

It is insisted that the libellant could not legally be ejected from the boat for any offence or violation of rules committed on a former occasion. It is insisted also, that having purchased a ticket from the agent of the company his right to a passage was perfect. Neither of these propositions is correct. In Com. v. Power, 7 Metc. [Mass.] 596, the passenger had actually purchased his ticket, and the chief justice says: "If he, Hall, gave no notice of his intention to enter the car as a passenger and of his right to do so, and if Power believed that his intention was to violate a reasonable subsisting regulation, then he and his associates were justified in removing him from the depot."

In Pearson v. Duane, 4 Wall. [71 U. S.] 605, Mr. Justice Davis, in giving the opinion of the court, held the expulsion of Duane to have been illegal, because it was delayed until the vessel had sailed. "But this refusal, he says, should have preceded the sailing of the ship. After the ship had got to sea, it was too late to take exception to the character of a passenger as to his peculiar position, provided he violated no inflexible rule of the boat in getting on board." The libellant in this case refused to give any intimation that he would abandon his trade on board the vessel. The steamboat company, it is evident, were quite willing to carry him and his baggage, and objected only to his persistent attempts to continue his traffic on their boat. He insisted that he had the right to pursue it, and the company resorted to the only means in their power to compel its abandonment, to wit: his removal from the boat. This was done with no unnecessary force, and accompanied by no indignity.

In my opinion, the removal was justified, and the decree must be reversed.