THE KALAMAZOO HACK & BUS COMPANY (LIMITED) v. OSCAR SOOTSMA.

*Railroad companies—Common carriers—Exclusive privileges to hack and bus men.*

1. A railroad company cannot legally give to one hack and bus company the right to the use and occupancy of a portion of its depot grounds, to the exclusion of others engaged in the like business of the carriage of passengers and freight to and from its depot.

2. The following general propositions are summarized from the opinion of Mr. Justice MORSE:

*a*—How. Stat. § 3355, requiring all railroad companies to grant equal facilities for the transportation of passengers and freight to all persons, companies, or corporations, does not relate entirely to the mere carriage *in the cars* of the road, but includes the receiving of such passengers and freight at its depots, and by other "persons, companies, or corporations" at the point upon its road where the carriage ends.

*b*—A railroad company can make all needful reasonable rules and regulations concerning the use of its depot and grounds, and can exclude all persons therefrom who have no business with the railroad or passengers going to and coming from its trains or depots, and it *probably* can prohibit all persons from soliciting business for themselves upon its premises; but it cannot, arbitrarily, admit one common carrier of passengers or freight to its depots or grounds, and exclude all others, for no other reason than that it is for its own profit or pleasure to do so.

Error to Kalamazoo. (Buck, J.) Argued November 20, 1890. Decided December 24, 1890.

Trespass. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Osborn & Mills*, for appellant.

*Hawes & Luby*, for defendant.

MORSE, J. The Kalamazoo & Hastings Construction Company, a limited copartnership, operating the Chicago, Kalamazoo & Saginaw Railway, being in the actual occupancy of a piece of land used by it as depot grounds in the city of Kalamazoo, leased to the plaintiff, also a limited copartnership, operating a hack and bus line in said city, a certain portion of said premises, described in the lease as—

"That piece of ground lying and being between the sidewalk on the .east side of Walbridge street and the side track of the Chicago, Kalamazoo & Saginaw Railway, in said city, being 70 feet in length from the south end of the depot there situate, said piece or parcel of ground to be occupied by said second parties for the purpose only

of an omnibus, baggage-wagon, and hack stand, at and about the time of the arrival and departure of trains upon said railway: *Provided*, said second parties shall permit the United States mail-wagon and the American Express Company's wagon, doing business in the city of Kalamazoo, to stand and occupy that portion of said piece or parcel of land which shall be assigned for that purpose by Lewis Sergeant,—for the term of two years, commencing on the 21st day of July, 1890, and ending on the 21st day of July, 1892."

Lewis Sergeant allotted the mail and express wagons 20 feet of ground immediately south of the depot. He also posted in two conspicuous places, upon and adjacent to the depot, the following notice:

"CHICAGO, KALAMAZOO & SAGINAW RAILWAY CO.
"GENERAL OFFICE.
"KALAMAZOO, MICH., July 21, 1890.
" *Notice to whom it may concern:*
" The Kalamazoo Hack & Bus Co. have leased that piece of ground which lies within a distance of seventy (70) feet immediately south of depot at Kalamazoo, and between side track and sidewalk on east line of Walbridge street. Said lease contains provision that Bus Co. will assign place on this ground for American Express Co., and mail-wagon.          L. SERGEANT,
"Supt. C., K. & S. Ry."

Mr. Sergeant also informed the hack and bus men generally that the ground described in said lease had been leased exclusively to the hack and bus company (the plaintiff), and that others must keep off. It also appeared that previous to the making of this lease this ground had been occupied by all the hack and bus men in the city, the defendant, among others, having been in the habit of going upon this ground and standing indiscriminately about the depot seeking passengers.

On August 1, 1890, the defendant, Sootsma, placed his hack upon the grounds so leased to plaintiff, and, upon being requested to move therefrom, refused to do so. He remained there until an incoming train, and obtained a

passenger, and drove away with him. The plaintiff thereupon commenced suit in trespass against Sootsma in justice's court, which resulted in judgment for defendant. Plaintiff appealed to the circuit court, where the circuit judge directed a verdict in favor of the defendant, on the ground that the lease was invalid, as opposed to public policy; that the lessor had no right to grant the exclusive use of the land to the plaintiff for the purposes mentioned in the lease.

There was some contention in the court below, and in this Court, regarding the right of plaintiff to bring an action of trespass under this alleged lease, the defendant claiming that it was a mere license conveying no property in the soil. In the view we take of the case, this question does not become material.

The plaintiff gave evidence in its behalf, upon the trial in the circuit, tending to show that, in the selling by the construction company of tickets upon its road to points upon other roads, west of Kalamazoo, a coupon was attached to the ticket, entitling the passenger to transfer with baggage across the city of Kalamazoo to the railway station at which the journey was to be resumed, and that an arrangement had been entered into with the plaintiff to perform such service, and carry such baggage and passengers; that, prior to the making of the lease, there had been trouble between the hack-men and the bus-men at the depot. Hack-men, not connected with plaintiff's line, in some instances, solicited and secured passengers, who supposed they were to be carried on these transfer coupons, and, at the end of the trip, refused to accept such coupons, and charged them for so carrying them. This made trouble between the railroad company and passengers, and also was the cause of disorder and quarrels between the various hack and bus men about the depot; and the lease was made to avoid such trouble and

annoyance. It was not shown, however, that defendant had ever been engaged in any quarrels, or that he had refused to carry passengers upon such coupons, or had solicited passengers with the idea that he would carry them upon the coupons, and then refused to accept them, and demanded at the end of the trip other compensation for carrying them. But it is no matter for what purpose this lease was made, as long as no improper action upon the part of the defendant was shown to have induced it.

The granting of this exclusive privilege to occupy this favored spot of ground, and one theretofore used customarily by all hack-men and bus-men, to the plaintiff, was a discrimination against the defendant, as well as all other hack-men and bus-men, not in the employ or service of the plaintiff, thus giving to the plaintiff a monopoly of the railroad company's grounds, for the standing of hacks and buses, and the solicitation of passengers therefor.

How. Stat. § 3355, provides that—

" All railroad corporations shall grant equal facilities for the transportation of passengers and freight to all persons, companies, or corporations."

A violation of this statute is punished by a penalty. This statute evidently does not relate entirely to the mere carriage in the cars of the road. To be effective, it must be construed to include also not only the receiving of such passengers and freight at its depots, but, as well, the receiving of them by other "persons, companies, or corporations" at the point upon its road where the carriage ends. The access to its depots must be free and equal to all, whether it be to take passage or leave the trains. No railroad company, under this statute, would be permitted to give to one hack and bus company exclusive access to its depots, or even better access than

to others, in the carriage of passengers or freights to its trains. Nor can it any more appropriately give such exclusive or better privilege to such company taking passengers or freights from its trains, to be transported from thence elsewhere. Therefore, the circuit court was right in directing the verdict as he did.

But independently of the statute, upon principle, the plaintiff could not recover in this case. A railroad company can make all needful reasonable rules and regulations concerning the use of its depots and grounds, and can exclude all persons therefrom who have no business with the railroad or the passengers going to and coming from the trains or depots, and it <u>probably</u> can prohibit all persons from soliciting business for themselves upon its premises; but it cannot, arbitrarily, admit one common carrier of passengers or freight to its depots or grounds, and exclude all others, for no other reason than that it is for its own profit or pleasure. Such rules and regulations must touch and affect all alike. It may determine the distance from its depot or track at which persons soliciting passengers may stand while on its grounds, but this determination must affect and apply to all. To permit a railroad company upon any pretense, except of wrong or misconduct on the part of the person excluded, to allow one hack-man or line of hacks to occupy a place upon its grounds which is denied to another, or to set apart the most favorable ground, as in this case, to one company, and to exclude the others therefrom, would be, in the language of Justice Field, in *Railroad Co. v. Tripp,* 147 Mass. 43 (17 N. E. Rep. 95),—

"To enable a railroad corporation largely to control the transportation of passengers and merchandise beyond its own line, and to establish a monopoly not granted by its charter, which might be solely for its own benefit, and not for the benefit of the public."

The rules and regulations of a railroad company in this respect must be not only reasonable, but they must not unnecessarily infringe upon the rights of the public, and others having or carrying on business in connection with railroad traffic or travel. *Summitt v. State,* 8 Lea, 413. It has been held in Massachusetts that a railroad corporation may contract with one to furnish the means to carry incoming passengers, or their baggage or merchandise, from its stations, and may grant to him the exclusive right there to solicit the patronage of such passengers; but three of the seven members of the supreme court dissented therefrom, giving, it seems to me, much the better reason for such dissent. *Railroad Co. v. Tripp,* 147 Mass. 35. I can find no other case holding this doctrine. In *Cravens v. Rodgers* (Mo.), the contrary doctrine is held. The granting to the owner of one bus line the exclusive right to the best part of a railway platform at the depot, and confining a rival line to other parts of the platform, where the chance of getting passengers was not so good, was held to be a discrimination tending to destroy competition, and to encourage a monopoly, which is obnoxious to the spirit of our laws, and contrary to the constitution of Missouri, which prohibits "discrimination in charges or facilities in transportation * * * between transportation companies and individuals, or in favor of either." 14 S W. Rep. 106. And in *Railway Co. v. Langlois* (decided by the supreme court of Montana, May 1, 1890), reported in 24 Pac. Rep. 209, it is held that a railroad company cannot grant the right to receive and discharge passengers at its platform to one hack-owner to the exclusion of others. In an able opinion, the case of *Railroad Co. v. Tripp, supra,* is reviewed, and the argument of the majority opinion in that case criticised and controverted. For other cases bearing upon this question, see *Marriott v.*

*Railway Co.,* 1 C. B. (N. S.) 499; *In re Palmer,* L. R. 6
C. P. 194; *In re Parkinson,* Id. 554; *Camblos v. Railroad
Co.,* 9 Phila. 411; *Express Co. v. Railroad Co.,* 57 Me. 188.

While many of the cases above cited are decided in
reference to statutes of the same import as our own, it
is clear to me that the action of the construction com-
pany—railroad company—in this case, in leasing this
ground to plaintiff, would, if sustained as valid, tend to
encourage and promote a monopoly of carriage of passen-
gers from this depot at Kalamazoo, not only to connect-
ing routes of travel upon other railroads, out of the city,
but to places within the city, contrary to the spirit of
our laws, and against that public policy that refuses to
encourage or foster monopolies in any kind of business.

The plea is made that the railway company, owning
these grounds, or having the actual occupancy and
possession thereof, has the same right of control over
them that any citizen would have, under similar circum-
stances, provided only that it discharges its duties to the
public, with reference thereto, as a common carrier.
This is true. But when the ground is used in its busi-
ness as common carrier, and for the purpose of the
standing or "setting" of hacks and buses to solicit the
patronage of incoming passengers, then it must use it for
the benefit of all, and not for the privilege of one. It
could probably refuse, if such refusal was reasonable in
that there was other proper ground for them to stand
upon, to permit any hacks or buses to occupy the ground
at all; but, if it opens the door to one, all must enter
and have equal facilities and privileges one with the
other. No doubt one wrongfully creating disorder or
disturbance upon this ground, or defrauding or deceiving
passengers, could be lawfully ejected therefrom, and, per-
sisting in such conduct, be forever barred therefrom by
the railroad company; but that would be a matter for

the railroad company, rather than the plaintiff. As the case stands, the plaintiff had no better right upon the premises than Sootsma.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.