OREGON SHORT LINE R. CO. v. DAVIDSON et al.

No. 1684. Decided February 17, 1908 (94 Pac. 10).

1. CARRIERS—RIGHTS OF HACKMEN ON DEPOT GROUNDS—CONSTITUTIONAL PROVISIONS. Constitution, art. 12, section 12, declaring all railroad and other transportation companies common carriers and subject to legislative control, and that such companies shall receive and transport each other's passengers and freight without discrimination or unnecessary delay, even if applying to drivers of cabs, hacks, and express wagons, does not confer on such persons the right to enter on a railroad company's depot grounds to solicit business, or prevent a railroad company inhibiting the soliciting of business on its grounds, except by one concern operating carriages.

2. SAME—MONOPOLIES. It being conceded that a railroad company may exclude all persons from going on its depot grounds to solicit business, the granting by the railroad company to one concern operating carriages the exclusive privilege of soliciting business thereon gives others no right to do so, even if such exclusive privilege be void as creating a monopoly, and though the grantee thereof be not excluded.

3. SAME. A railroad may, subject only to regulation by the state, in the interest of the public, as to fares to be charged and service to be furnished, prohibit all but one carriage concern soliciting on its depot grounds the carriage therefrom of passengers and their baggage.

APPEAL from District Court, Third District; C. W. Morse, Judge.

Action by the Oregon Short Line Railroad Company against F. T. Davidson and others. Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*Powers & Marioneaux* for appellants.

*P. L. Williams* and *George H. Smith* for respondent.

FRICK, J.

This is an action for equitable relief by injunction. The attorneys for the respective parties have agreed upon the facts, which, briefly stated, are as follows: The respondent is a corporation owning and operating a railroad, and, in connection therewith, maintains and conducts a depot and depot grounds in Salt Lake City. Its trains and those of the S. P., L. A. & S. L. Railway Company arrived at and depart from said depot, at and from which several hundred passengers arrive and depart daily. A portion of the depot grounds is fenced off, with a street entrance thereto through a gate. The fenced-off portion has platforms and other conveniences for the accommodation of passengers arriving or departing on the trains; also conveniences for cabs, carriages, and other vehicles engaged in the business of transporting passengers and baggage to and from said trains. The respondent permits all persons to enter the fenced-off portion of said grounds and to have access to the arriving or departing trains, if such persons have been engaged to meet incoming, or to deliver baggage or set down outgoing, passengers at the trains, but requires all such persons to leave the inclosure as soon as they have received such persons or baggage from, or after delivering the baggage or passengers at, the trains. Respondent claims that, in order to provide reliable means of conveyance to passengers arriving or depart-

ing on its trains and the trains of the other railroad company referred to, it has entered into an agreement and arrangement with a reliable company owning and operating good and suitable carriages and other vehicles which are run between said depot and all points in Salt Lake City; that by virtue of said arrangement said company has the exclusive privilege of entrance into the inclosure, the right of access to the platforms and conveniences erected and maintained in said enclosure, and the right to solicit custom or patronage of, and to render services to, arriving and departing passengers at, or to deliver them to, the trains. The appellants are all engaged in the business of running hacks, cabs, wagons, and other vehicles suitable and used for transporting passengers and baggage in Salt Lake City and to and from respondent's depot. Notwithstanding the fact that respondent repeatedly has forbidden the appellants to enter the portion of the depot grounds fenced off as above stated, for the purpose of soliciting patronage, they have entered the same, and insist upon the right of doing so, and will, unless restrained, continue to do so. Upon substantially the foregoing facts the district court entered judgment enjoining appellants from entering said inclosure and from soliciting patronage at said platform and in said grounds, but permitted them to take passengers and their baggage into said inclosure and receive them and their baggage from said trains when especially employed in advance for that purpose by such passengers. The appellants insist that the court erred in its conclusion of law, and that the judgment should have been in favor of appellants.

The claim of appellants, as stated by their counsel in their brief, in substance is as follows: "The appellants concede the right of the plaintiff [respondent] to exclude all persons from its depot grounds who are there for the purpose of soliciting business, but insist that the respondent cannot admit one common carrier to its grounds and allow it to solicit business, and exclude all other common carriers; that when it permits . . . one common carrier to enter its depot grounds and range its carriages along the platforms . . .

that the gate is opened to all carriers of passengers who desire to enter the grounds." To do otherwise, it is asserted, would create a monopoly, and would allow the respondent to control the transportation of passengers beyond its own railroad, and, in effect, dictate to them whom they should employ in being transferred to other depots, or in being transported from the depot to the different points in Salt Lake City. Upon the other hand, counsel for respondent assert that the appellants cannot, as a matter of right, enter its depot or upon its grounds, or have access to its trains, for the purpose of soliciting custom or patronage; that to do this is a privilege merely, which may be granted to one and withheld from another at the pleasure of the respondent; that the respondent may regulate and control the matter of carrying on or soliciting business in its depot or upon its grounds, and in and about its trains, and to that end may permit one or more persons to have access thereto and exclude all others therefrom, except when such other persons come there as prospective passengers, or for the purpose of transacting business with it, or at the request of persons to either receive them at or take them to the trains of the respondent, or to and from the trains of any other railroad company that may be using respondent's tracks, depot, and depot grounds. Appellants, in part at least, base their claim upon section 12 of article 12 of the Constitution of this state, which is as follows:

"All railroad and other *transportation companies are declared to* be common carriers, and subject to legislative control; and such companies shall receive and transport each other's passengers and freight without discrimination or unnecessary delay."

It is, to say the least, quite doubtful whether this provision was intended to include, or in fact includes, cabdrivers, hackmen, and expressmen. The provision refers to other transportation companies to be sure, but it requires only that such transportation companies receive and transport each others passengers and freight without discrimination or unnecessary delay; that is, those companies must not favor their own passengers or show favoritism to their own shippers over

those passengers or shippers of freight coming from other companies. This falls far short of conferring a right upon one common carrier to enter upon and use the property of another common carrier for the purpose of soliciting custom to build up his own business. This provision was not intended as a prohibition upon a common carrier to promulgate and enforce reasonable rules and regulations respecting the conduct of his own business. This does not prevent him from protecting his passengers from undue annoyance and interference while they are on his premises by others who may desire to solicit the business and patronage of such passengers. Neither does it prevent the common carrier from providing means by which a passenger may make arrangements for the transportation of either himself or his property beyond the end of the carrier's railroad. To attain this end the carrier may arrange for all necessary and convenient terminal facilities to accommodate both incoming and outgoing passengers. One carrier is not required to provide space or facilities upon his own property for other carriers, through which they may increase and build up their own business. The question has often been before the courts, and has been thoroughly considered and discussed, both in this country and in England; and, as might well be expected, the courts are not in harmony. Some of the American courts substantially hold that, while the common carrier may promulgate and enforce reasonable rules and regulations with regard to the matter now under consideration and may exclude all persons from entering upon his property who come there for the purpose of soliciting patronage or business, nevertheless he may not grant the privilege to do this to one and exclude all others. In other words, he must either exclude all or admit all. While the different courts assign various reasons for these holdings, the one generally relied upon is that to permit a common carrier to select one carrier from all others and grant him the exclusive privilege tends to build up a monopoly and to destroy competition, which is against public policy. The foregoing doctrine is supported by the following cases: *Hack & Bus Co. v. Sootsma,* 84 Mich. 194, 47 N. W. 667, 10 L. R. A. 819, 22 Am. St. Rep. 693; *Montana Union Ry. Co. v. Langlois,* 9

Mont. 419, 24 Pac. 209, 8 L. R. A. 753, 18 Am. St. Rep. 745; *Cravens v. Rogers,* 101 Mo. 249, 14 S. W. 106; *Indianapolis Union Ry. Co. v. Dohm,* 153 Ind. 10, 53 N. E. 937, 45 L. R. A. 427, 74 Am. St. Rep. 274; *State v. Reed,* 76 Miss. 211, 24 South. 308, 43 L. R. A. 134, 71 Am. St. Rep. 528; *McConnell v. Pedigo,* 92 Ky. 465, 18 S. W. 15.

The following cases cited by appellants, and also sometimes cited as authorities in some of the foregoing cases, do not directly pass upon the question presented by appellants: *Lucas v. Herbert,* 148 Ind. 64, 47 N. E. 146, 37 L. R. A. 376; *New England Exp. Co. v. Maine Cent Ry. Co.,* 57 Me. 188, 2 Am. Rep. 31; *Sanford v. Railway Co.,* 24 Pa. 378, 64 Am. Dec. 667; *Pennsylvania Ry. Co. v. City of Chicago,* 181 Ill. 289, 54 N. E. 825, 53 L. R. A. 223; *Lindsay v. Anniston,* 104 Ala. 257, 16 South. 545, 27 L. R. A. 436, 53 Am. St. Rep. 44; *Mariott v. London & S. W. Ry. Co.,* 1 C. B. (N. S.) 489. The doctrine announced in 57 Me. 188, 2 Am. Rep. 31, and in 24 Pa. 378, 64 Am. Dec. 667, has long since been abandoned. In those cases it was held that one common carrier was legally required to carry another common carrier, although such other carrier desired to carry on an independent business on the property of the first carrier. This doctrine was exploded by the Supreme Court of the United States in the *Express Cases,* 117 U. S. 1, 6 Sup. Ct. 542, 29 L. Ed. 791, where the true distinction is pointed out with regard to persons who desire to be carried as passengers or shippers of freight, and such as desire to be transported for the purpose of transacting or of carrying on an independent business with the public upon the property or trains of a common carrier. A common carrier need not provide facilities for others to do business, but must transport them and their property and provided reasonable facilities to do this.

The following American cases support the doctrine that a common carrier may grant an exclusive privilege to one and exclude all others who desire to go upon his premises for the sole purpose of soliciting custom or business: *Old Colony Ry. Co. v. Tripp,* 147 Mass. 35, 17 N. E. 89, 9 Am. St. Rep.

661 (by a divided court); *Boston A. R. Co. v. Brown,* 177
Mass. 65, 58 N. E. 189, 52 L. R. A. 418, 19 A. & E. R. R.
Cases (N. S.) 304; *Boston & M. R. R. v. Sullivan,* 177 Mass.
230, 58 N. E. 489, 83 Am. St. Rep. 275, 20 A. & E. R. R.
Cases (N. S.) 356; *Barney v. O. B. & H. Steamboat Co.,* 67
N. Y. 301, 23 Am. Rep. 115; *Fluker v. Georgia R. & B. Co.,*
81 Ga. 461, 8 S. E. 529, 2 L. R. A. 843, 12 Am. St. Rep.
328; *Kates v. Atlanta Baggage & Cab Co.* (Ga.), 16 A. &
E. R. R. Cases (N. S.) 140; *New York, N. H. & H. R. Co. v.
Bork,* 23 R. I. 218, 49 Atl. 965, 22 A. & E. R. R. Cases (N.
S.) 511; *Hedding v. Gallagher,* 72 N. H. 377, 57 Atl. 225,
64 L. R. A. 811, 35 A. & E. R. R. Cases (N. S.) 91; *Don-
ovan v. Pennsylvania Co.,* 120 Fed. 215, 57 C. C. A. 362,
61 L. R. A. 140; *Donovan v. Pennsylvania Co.,* 199 U. S. 279,
26 Sup. Ct. 91, 50 L. Ed. 192; *Barney v. Martin,* 2 Fed.
Cas. 892, No. 1,030; *Norfolk & W. Ry. Co. v. Old Domin-
ion Baggage Transf. Co.,* 99 Va. 111, 37 S. E. 784, 50 L. R.
A. 722; *State v. Union Depot Co.,* 71 Ohio, 379, 73 N. E.
633, 68 L. R. A. 792; *Brown v. New York & H. R. Ry. Co.,*
75 Hun 357, 27 N. Y. Supp. 69. The following English
cases also support respondent's contention: *Perth Gen. Sta-
tion Committee v. Ross,* 8 Am. & Eng. R. Cases (N. S.) 639;
*Bedell v. Eastern C. Ry. Co.,* 2 C. B. (N. S.) 509; *Barker
v. Midland Ry. Co.,* 18 C. B. 45.

We have not cited all the cases either pro or con upon the
question; but, as those omitted are about equally divided,
nothing would be gained either way by citing them. There
are but few of the cases which support appellants' contention
that enter upon a thorough discussion of the principles in-
volved. Those cases that do discuss it most freely are the
ones cited from Montana, Michigan, and the dissenting opin-
ion in the case of *Old Colony Rd. Co. v. Tripp.* Upon the
other hand, there are quite a number of courts that support
the contention of the respondent which discuss the question
both from the standpoint of statutory provisions similar to
the one quoted by us from the Constitution, and also in view
of the principles of the common law which are applicable.
Some of the courts which deny the right of the common car-

rier to grant exclusive privileges claim the weight of authority to be against the right, while some of those opposed to that view likewise assert that the weight of authority supports their view. From a thorough examination of the cases passing upon the question we have arrived at the conclusion expressed by Mr. Justice Harlan of the Supreme Court of the United States in his opinion rendered in the case of *Donovan v. Pennsylvania Company,* 199 U. S., at page 299, 26 Sup. Ct., at page 96, 50 L. Ed. 192, wherein he says:

"There are cases to the contrary; but in our opinion the better view, the one sustained by the clear weight of authority and by sound reason and public policy, is that which we have expressed."

This view sustains respondent's contention and supports the judgment of the lower court in this case.

Apart, however, from the number of adjudicated cases either way, let us pause a moment for the purpose of examining the underlying principles involved in the proposition. Let us look at it in the light of reason and logic. Counsel for appellants concede (and this concession is also made by all the authorities cited by them) that the respondent may exclude all persons who desire to come upon its premises for the sole purpose of soliciting custom or business, and may likewise prevent all who come there to transact business with it from soliciting business for themselves. But counsel contend that respondent may not grant the privilege to one to solicit business and refuse it to all others. Counsel, therefore, must concede that no person may go upon respondent's premises to solicit business as matter of right; that to do so is a privilege that the respondent may grant or refuse at pleasure. If this be, how do the appellant acquire the right to compel the respondent to admit them, or any one of them, into its depot or upon its ground for the purpose of soliciting business in their own behalf? Appellants argue that they obtain the right from the fact that the respondent may not discriminate as between applicants in conferring the privilege, and that, if it grants it to one, then it has waived the right to exclude all others and must admit all. This argument seems to be

based upon the theory that so long as all are excluded no monopoly is created, but, if all are excluded save one, then a monopoly results in favor of the one who is granted the privilege, Assuming that the respondent may not create a monopoly in this regard, and for that reason the exclusive privilege granted to one is void as against public policy, how does this give the appellants the right to enter upon the respondent's premises for the purpose of soliciting business? Does the granting of an exclusive privilege to one, which, as is contended, is illegal and void, transform what are termed mere privileges into absolute rights? That this transformation takes place is the logical result of appellants' contention. If it be true that respondent may not grant an exclusive privilege, and that to do so is illegal, it does not follow that, if it does this, thereby a mere privilege is transformed into a right. What would legally follow is this: The exclusive privilege granted would confer no legal rights upon the grantee and would not be binding upon the respondent. In other words it would leave the appellants, the person to whom the privilege was granted, and the respondent in the same relative situation they were in before the privilege was granted. The grantee could not enforce the contract, because illegal, and hence could be excluded from respondent's premises at its pleasure; and, since the appellants never had the permission to enter, it necessarily follows that they, too, may be excluded. The mere fact, therefore, that the grantee is not excluded, does not give appellants the legal right to enter.

Appellants further assert that respondent's property used in the business of a common carrier is dedicated to public use, and, as they are likewise engaged in a similar business they have the right, in the interest of the public, to enter upon property that is so dedicated. No doubt, if either of them has any business with respondent, he may so enter to transact such business. If appellants desire to be carried as passengers or intend to deliver or receive freight, they may enter upon respondent's premises as a matter of right. All or any one of them may also do this in behalf of another who has business with respondent; but this gives them no legal right to require

the respondent to devote any of its property to their use for the purpose of soliciting business for themselves. Suppose the respondent, through its agents demanded the right to enter upon appellants' vehicles for the purpose of soliciting business in its own behalf, and based this demand upon the ground that such vehicles were engaged in a public business, in that they were used in the business of common carriers; would its claim be allowed? In what way would this claim differ in principle from the one urged by appellants? Neither can we see how appellants can prevail upon the ground that the public is interested; that to deny to them the right to enter respondent's premises might result in destroying competition, and thus advance the prices the public will be required to pay for the services appellants desire to render to the public; and that it may result in making the service inefficient, if not inadequate. In making this claim appellants overlook the fact that respondent at all times is subject to regulation and control by the state; that it is a public service corporation and thus amenable to regulation. It may be required to provide reasonable conveniences for the public in the conduct of its business. It must treat all alike, and afford all an equal opportunity to transact business, and may not discriminate in its charges for services rendered. If appellants are engaged in a like business, as they claim they are, they are subject to the same regulation and control. Indeed, the state, through its agencies, may fix the charges they may exact for transporting both persons and property to and from the trains of respondent or its depot. These regulations apply to any one to whom the respondent may grant the privilege to enter upon its premises to make arrangements with incoming passengers to either transport them or their baggage and property to any part of the city. The opportunity to do this does not prevent such passengers from engaging any other person, either in advance of their arrival or after they have arrived, for the purpose of transporting them or their property; nor are they prevented from doing this at or before the time of their departure. If the charge for the service is regulated by law or ordinance, and the facilities of transportation

are reasonable and adequate, the public cannot complain. Neither is the respondent required to provide passengers with the opportunity of selecting any one of numerous competitors for their patronage the moment such passengers step from the trains of the respondent. If appellants as common carriers, have the right to enter upon the premises of respondent to solicit and compete for business, why may not a street car company claim the same right to do so? It, too, may assert that it is in the interest of the public in that it would promote competition.

All these matters are subject to regulation by the state, and we know of no law, nor of any principle of justice, whereby one common carrier may, without compensation therefor, be compelled to provide space upon its premises for any common carrier to solicit patronage or business. If it must do this for one, it must do so for all who desire to carry on such business. If the public is inconvenienced or oppressed by any regulations the respondent may adopt, or if the service becomes inadequate or unreasonable and dilatory, the state may compel the respondent to provide reasonable and adequate means to meet the necessities of the public; but neither the public nor the state is here complaining nor resisting the application of the respondent. The appellants, therefore, may not champion the rights of the public, nor those of the state; and in no event may they do so for the sole purpose of advancing their own private interests, although such interests may in some way come in touch with the interests of the public. No doubt the respondent may not interfere with any one who solicits business outside of its own premises, so long as such solicitors do not unduly impede the ingress and egress to and from its premises. Such regulation, however, if any is to be made, belongs to the municipality or the state. Some of the courts have advanced the theory that the carrier need not provide space for all hackmen or transfer companies, but must provide only a reasonable amount of room. If this be sound, then it follows that, if the space cannot accommodate all, some must be excluded. If some may be excluded in this way, why may not all be except one? Moreover, one cab or transfer com-

pany may alone have more vehicles than can at one time be admitted to the grounds. If this condition exists, and the carrier need not provide space for all, why is it that the arrangement he may make with one only, who occupies all the space, is void? If it be said that the carrier must allow at least more than one the right to enter, but need not provide space for all, then, again, the carrier must necessarily select those that may enter from the whole number who desire to do so. In this selection the carrier must necessarily discriminate in favor of one or more and against others. Is it not more in consonance with reason and common sense to permit the carrier to regulate the whole matter, subject to the control of the state in case the carrier abuses his privilege as a quasi public servant? Can the law confer the right upon one person to carry on a part of his own business upon the property of another under the guise of regulating the business of transporting persons and property? This may, perhaps, be done in case the state imposes this condition in granting the charter or privilege under which the business is conducted. The courts however, have no right to impose such condition under the mere claim that it is sanctioned by the elastic term of public policy. The principles adverted to are well stated and illustrated in the cases of *Pennsylvania Company v. City of Chicago,* 181 Ill. 289, 54 N. E. 825, 53 L. R. A. 223, and *Donovan v. Pennsylvania Company,* 120 Fed. 215, 57 C. C. A. 362, 61 L. R. A. 140, which is affirmed in 199 U. S. 279, 26 Sup. Ct. 91, 50 L. Ed. 192. The last two cases cited go over the whole subject and treat it both from the standpoint of statutory regulation and the fundamental principles involved, and they clearly sustain the injunction granted in this case. We are convinced that the judgment of the district court is in harmony with the underlying principles involved and is sustained by sound reason.

The judgment is therefore affirmed, with costs to respondent.

McCARTY, C. J., and LEWIS, District Judge, concur.