**ILLINOIS CENT. R. CO. v. CITY OF NEW ORLEANS et al.**

No. 13432.

United States Court of Appeals
Fifth Circuit.

March 16, 1951.

Selim B. Lemle, Pat F. Bass, New Orleans, La., for appellant.

James O'Niell, Joseph V. DiRosa, Henry L. Oulliber, Jr., Henry B. Curtis, City Atty., and Nelson S. Wooddy, Asst. City Atty., City of New Orleans, all of New Orleans, La., for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a decree denying an injunction sought by appellant and dismissing its complaint against the appellees. The facts are as follows:

For many years prior to September 8th, 1949, the appellant owned property at the corner of Howard Avenue and South Rampart Street in New Orleans, on which its station was and is located. The station-building on the Rampart-Street side opens upon a covered concourse, which forms a part of the building property. In front of this covered concourse, and between it and the sidewalk-line of Rampart Street, is a strip of property used for pedestrian and vehicular traffic by patrons of the railroads entering and leaving the station. For many

years the appellant has had in effect a contract between it and the Toye Brothers Yellow Cab Company, by which the cabs of that company have had the exclusive right to solicit and pick up passengers on the covered concourse and adjoining strip of property at said station. For this right the appellant receives a rental of $1800 per year.

On October 22, 1947, as part of a civic development commonly known as the Union Passenger Terminal Project, the City of New Orleans entered into a contract with the appellant and other railroads serving the city, the pertinent parts of which provided that the appellant would sell and transfer to said city the entire station property at the corner of Howard Avenue and South Rampart Street, and, until the completion of the new terminal, the city would lease the property to the railroad for its use and enjoyment. On the 8th of September, 1949, pursuant to said agreement, the appellant transferred and conveyed its said property to the city; contemporaneously with this conveyance, the city leased the same property to the appellant. Included in the demise to the city and the lease to the appellant was the station building, including the covered concourse which serves as the front of the station, and a plot of land approximately 40 feet wide and 100 feet long immediately adjacent to the concourse.

On January 16, 1950, the Commission Council of the City of New Orleans adopted Ordinance No. 17,733, which amended Ordinance No. 16,605 governing the operation of taxicabs and other vehicles for hire, by redefining the term "street" so as to include, among other things, driveways or areas outside of, adjacent to, or in, all railroad stations, which driveways or areas belong to the city of New Orleans. Ordinance No. 17,733 further provided that the places coming within the definition of the term "street" were to remain open and could be used by any and all duly licensed taxicabs or other for-hire vehicles without charge and without distinction as to ownership of such vehicles or the licensed operators thereof. Immediately after this ordinance became effective, all properly licensed cabs

began soliciting and picking up passengers in front of said station. The appellant, in order to prevent further alleged invasion of its property rights, brought this action against the city, and various taxicab owners as representatives of themselves and others of the same class, seeking to have them enjoined from trespassing upon its leased property, and against the city, seeking to have said Ordinance No. 17,733 declared unconstitutional and its enforcement enjoined. Having denied the application for an interlocutory injunction, the lower court heard the suit on its merits, and issued a decree denying the injunction and dismissing the complaint.

The appellant contends on this appeal that, under its contract of lease with the city, it has the right to sublease, and grant concessions on, any portion of the demised premises for any purpose normally incident to its passenger-transportation business. It further contends that the passage of Ordinance No. 17,733 is unconstitutional because it impairs the obligation of the city's contract with it; that the activities of the taxicab companies, other than the Yellow Cab Company, on the concourse and in the area immediately adjacent thereto constitute a trespass upon its property, and that the parties in question should be enjoined from continuing the trespass. The city contends that the grant of an exclusive right to solicit and pick up passengers at the station to one taxicab company is not a concession normally incident to the railroad's passenger-transportation business as required by the Terminal Agreement; that the area immediately adjacent to the covered concourse in front of the station is within the definition of a street, as defined in Ordinance No. 17,733; and as such the railroad has no authority under its lease to control taxicab activities on such street; and that there is a want of equity in the railroad's application for a permanent injunction which would shield and foster an unlawful monopoly granted the Yellow Cab Company by the appellant.

The appellant's right to sublease or grant concessions is limited by the lease between it and the city. Paragraph C of Section 56 of the Terminal Agreement (which was

made a part of this lease) provides: "C. The Illinois Central shall have the right to sublease or grant concessions on any portions of the demised premises for any purpose normally incident to its passenger operations thereon. * * * It shall also retain all revenues from all other subleases and concessions of existing or temporary facilities. From and after the date that any such sublease or concession ceases to be operated in either the present or temporary facilities as a result of the construction operations, there shall be paid to the Illinois Central until Completion Date a net monthly revenue equal to the average net monthly rental received by the Illinois Central from such sublease or concession during the six-calendar-month period next preceding the month in which the operation of such sublease or concession ceases. * * *"

The primary question presented for our determination is whether the granting by appellant to the Yellow Cab Company of the exclusive right to serve incoming passengers, who conclude their journey by rail at the said Illinois Central station, is a sublease or concession normally incident to its passenger operations. Stated another way, does the lease give the appellant the right to prescribe the kind of taxicab its passengers will use after they have ended the train part of their travel? We are not here concerned with the railroad's right to transfer through-passengers from one station to another by contract carriers.

It is obvious that the parties to this suit have put different interpretations on the meaning of the terms "sublease or concession" and "normally incident to passenger operations" as they are used in the Terminal Agreement, which is that part of the lease under which the railroad is asserting its rights. The city must have believed that these terms were not so broad and inclusive as to give the railroad the right to grant an exclusive taxicab franchise; otherwise it would not have passed Ordinance No. 17,-733, which opened the property in question to use by all taxicab operators. The railroad must have believed that a taxicab franchise was a "concession" which was "normally incident to its passenger operations"; otherwise it would not have granted

the Yellow Cab Company such an exclusive right. Under such a situation as this, where there is in question a doubtful or ambiguous provision of a lease agreement, we must consider the contract as a whole, and determine which of the two interpretations is correct.

A reading of Paragraph C of Section 56 of the Terminal Agreement indicates that the railroad had a right to sublease or grant concessions on "portions of the demised premises." Apparently, such sublessees or concessionaires would each occupy a portion of the premises, and would operate their particular specialty, whether it should be a news stand, barber shop, restaurant, or shoe shine stand. These types of operations are commonly thought of and referred to as concessions, particularly with reference to railroad stations. Such concessions above mentioned are normally incident to the railroad's passenger operations.

We think that the exclusive franchise with the Yellow Cab Company cannot be brought within the commonly understood meaning of the term "sublease or concession." It is not normally incident to the railroad's passenger operations. The railroad's obligation to its passengers completely ceases, in so far as their transportation is concerned, when they get off the train and leave the station of their destination. In Kalamazoo Hack & Bus Co. v. Sootsma, 84 Mich. 194, 47 N.W. 667, 668, 10 L.R.A. 819, the court said that to permit a railroad company to allow one line of hacks to occupy a place on its grounds, which was denied to another, was, in the language of Justice Field in Old Colony R. Co. v. Tripp, 147 Mass. 35, 43, 17 N.E. 89, 95, "to enable a railroad corporation largely to control the transportation of passengers and merchandise beyond its own line, and to establish a monopoly not granted by its charter, which might be solely for its own benefit, and not for the benefit of the public." In United States v. Yellow Cab Company, 332 U.S. 218, at page 231, 67 S.Ct. 1560, 91 L.Ed. 2010, the Supreme Court states that the common understanding is that a traveler intending to make an interstate rail journey begins his interstate movement when he boards the train at the station, and that his

journey ends when he disembarks at the station in the city of his destination. Since the exclusive franchise in question here is not a sublease or concession normally incident to the railroad's passenger operations, and no specific provision of the lease granted the right now asserted by appellant, we conclude that it was not acquired by it under the lease. Section 236(f) of the Restatement of Contracts provides that, in interpreting uncertain provisions of an agreement where the public interest is affected, an interpretation which favors the public is preferred.

There are federal and state laws against monopolies. Section 14 of Article 19 of the Louisiana Constitution provides: "Combinations * * * in restraint of trade, commerce or business, as well as all monopolies or combinations to monopolize trade, commerce or business, are hereby prohibited in the State of Louisiana." Monopolies are objectionable, not only because of the effect they have had, but also because of the effect they may have against the public interest. Courts of equity are reluctant to enforce monopolies by injunction, particularly when the injunction will restrain competition on public streets or on streets used by the public; but it is not necessary for us to discuss this feature of the case because, under our interpretation of the lease, the appellant was not granted the right to control the use of taxicabs by incoming passengers leaving its station.

The decree appealed from is affirmed.

Affirmed.