THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY vs. GEORGE S. SCOVILL.

*Third Judicial District, New Haven, June Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A railroad company may lawfully confine the business of soliciting the carriage of passengers and baggage upon its station grounds, to one or more licensees, provided such regulation is not inconsistent with the reasonable accommodation of its patrons.

The plaintiff adopted a rule that no person should solicit the carriage of passengers or their baggage, on its station grounds, unless duly licensed by it; and prohibited all owners and drivers of public hacks and express wagons not so authorized from plying their business on said grounds. *Held* that this rule could not fairly be construed to prevent the driver of any vehicle from entering the station grounds to fulfill a contract of employment with a passenger or intending passenger, but only from entering such grounds to there solicit or ply the business of a hack-driver or baggage expressman.

In the case at bar it appeared from the averments of the complaint that the defendant, a baggage expressman, had repeatedly violated the foregoing rule; that he had inflicted great damage upon the plaintiff, and possessed no property sufficient to respond to judgments at law; and that he threatened and intended to continue his trespasses. *Held*, upon demurrer, that an injunction was not an inappropriate remedy, and that it was of no importance, so far as the defendant was concerned, whether the suit was instituted and maintained at the expense of the railroad company or at the expense of its licensee.

A demurrer to the prayer for an injunction ought not to be sustained if, upon any state of the proof which the allegations of the complaint justify, the court could, in the exercise of its judicial discretion, grant an injunction.

Argued June 15th—decided October 5th, 1898.

SUIT for an injunction to restrain the defendant from enter-

*Transferred from the first judicial district.

ing the plaintiff's station grounds at Middletown and there soliciting the carriage of passengers and baggage, brought to the Superior Court in Middlesex County where the defendant's demurrer to the complaint was sustained, *pro forma*, by the court, *George W. Wheeler, J.*, and judgment rendered for the defendant, from which the plaintiff appealed for alleged errors in the rulings of the court. *Error.*

The substantial allegations of the complaint were as follows: The plaintiff is a common carrier of passengers and goods by rail, and for the purposes of its business and for the use of persons having business with it, was, on September 23d, 1897, and ever since has been, possessed of a passenger depot in Middletown and certain surrounding station grounds.

On July 10th, 1897, its directors passed the following resolutions: " *Resolved*, that for the purpose of preventing annoyance to the patrons of this company and the public rightfully using the company's station grounds, and for the purpose of avoiding confusion and securing the proper conduct of the business of this company at such stations, the following regulation is hereby adopted: No person shall solicit the carriage of passengers or their baggage on station grounds of this company unless authorized so to do by written agreement with this company or by its permission; and all owners and drivers of public hacks and carriages and express wagons not so authorized are prohibited from plying their business on said station grounds. *Resolved*, that the vice-president be and he is hereby authorized to execute on behalf of this company contracts granting carriage and express-wagon privileges on station grounds on such terms as he shall deem reasonable."

On August 19th, pursuant to said resolutions, it entered into a contract with W. O. Carrier of Middletown, whereby, in consideration of his agreement to perform his obligations under it, it agreed to give him, so far as it lawfully might, " the exclusive right and privilege to maintain a public carriage stand and baggage transfer on its station premises at Middletown, Connecticut, and to solicit on said premises

the patronage of passengers on its railroads for the carriage and baggage business upon the following conditions, to wit: *First.* Said party of the second part shall provide for regular service at said station suitable carriages in number and condition equal to those at present in use, and at all times in sufficient number to fully accommodate the patrons and passengers of said party of the first part; the drivers, horses, carriages, and entire equipment furnished to be satisfactory to said party of the first part. *Second.* Said party of the second part shall make a schedule of prices for the carriage of passengers or their baggage from said station to any point in said Middletown that shall be satisfactory to said party of the first part, and, in all respects, will conform to such regulations of said party of the first part as it may deem reasonable and proper for the conduct of said business. *Third.* Said party of the second part shall carry all United States mails transported by said party of the first part to and from the post-office at Middletown, and perform all telegraph messenger service; that within the 'free limits' (as established by the Western Union Telegraph Company), to be performed without charge, and all outside of said limits to be at the regular rates, as established by said telegraph company."

The contract also contained these provisions: "It is hereby understood and agreed that the said party of the first part shall not be put to any expense or cost in securing to said party of the second part the privilege hereinbefore granted, and that said party of the second part shall, and will, at his own cost and expense, take such proceedings, should any become necessary, in the name of the said party of the first part and do such acts as may be required to secure to the said party of the second part the enjoyment of such rights, but no proceedings shall be taken in the name of the said party of the first part without its consent in writing having been first obtained. Said party of the second part hereby agrees to hold said party of the first part harmless from all loss, cost, or expense by reason of any claims or suits growing out of acts or proceedings done or taken by said second party, as aforesaid, to prevent the infringement by others of

the rights hereinbefore granted.   This agreement to continue in full force ·and effect until August 19th, 1898, but it is understood and agreed that it may be terminated upon thirty days' notice in writing given by either of the parties hereto to the other."

On August 24th, the plaintiff placed in conspicuous positions at the public entrances to said station grounds and on said depot, and forwarded to each expressman in said Middletown, and to the defendant, by registered mail, the following printed notice signed by its superintendent:  " Please take notice that for the purpose of preventing annoyance to the patrons of this company and the public rightfully using this company's station grounds, and for the purpose of avoiding confusion and securing the proper conduct of the business of this company at such stations, this company has adopted the following regulation:  'No person shall solicit the carriage of passengers or their baggage on station grounds of this company unless authorized so to do by written agreement with this company or by its permission;  and all owners and drivers of public hacks and carriages and express wagons not so authorized are prohibited from plying their business on said station grounds.'   The exclusive right and privilege of soliciting on the Middletown station grounds the patronage of railroad passengers for the carriage of themselves or their baggage, has been granted to W. O. Carrier; and you are notified not· to trespass or ply said business on said station grounds."

On September 23d, for the purpose of soliciting the patronage of passengers arriving on the cars of the plaintiff, for the carriage of themselves, their baggage or merchandise, and contrary to said regulations and notices and against the right of the plaintiff, the defendant, his servants and agents, unlawfully entered with horses and wagons on said station grounds, and then and there, wilfully disregarding said notices and wilfully violating said regulations, and without the permission of the plaintiff, unlawfully solicited and obtained the patronage of Henry D. Butler of New Haven, for the carriage of his baggage and merchandise from the depot, baggage room

or platforms on said station grounds, said Butler having arrived as a passenger on the train of the plaintiff reaching said Middletown at 8:37 A. M., on the Air Line Division, from New Haven: and the defendant also unlawfully solicited, then and there, by his servants or agents, the carriage of baggage and merchandise of other passengers, to the plaintiff unknown, who arrived on said train.

The plaintiff has many trains arriving every week-day at said Middletown station. The defendant has, since receiving the notice, both before and after the 23d day of September, 1897, been accustomed to wrongfully enter said station grounds before the arrival of said several trains, without having any business with the plaintiff, and to there solicit the carriage of passengers alighting from said trains and of their baggage; and the defendant further threatens to wrongfully continue said practices and to reiterate many times a day such wrongful trespasses on said grounds of the plaintiff without having any business with the plaintiff, for the purpose of unlawfully soliciting on said station grounds in violation of plaintiff's said rules and regulations for the carriage of passengers and their baggage. The plaintiff by said repeated wrongful acts of the defendant committed and threatened as aforesaid, suffers great damage for which it could not recover at law without a multiplicity of suits, and the defendant has not sufficient property subject to execution to answer damages, if recovered against him by the plaintiff in suits at law, and the plaintiff therefore has no adequate remedy at law.

The claim was for an injunction " to restrain the defendant from continuing to make such unlawful entries, and from continuing to solicit on said station grounds the patronage of passengers arriving on the cars of the plaintiff, for the carriage of themselves, their baggage or their merchandise."

The defendant demurred to the prayer for relief, because on the facts stated the plaintiff was not entitled to the relief therein sought, and assigned the following reasons : " 1. The mere allegation that the threatened acts of the defendant will result in great damage to the plaintiff is not sufficient ground for an injunction to be granted restraining the defendant from

committing such acts, but facts should be stated that the court may see how and why it would result, and that the apprehension of irreparable mischief is well founded. 2. It nowhere appears that the injury, if any, which might result to the plaintiff from such acts of the defendant, is not susceptible of perfect pecuniary compensation by action at law. 3. The allegations that the plaintiff could not recover at law for said alleged trespasses committed and threatened, without a multiplicity of suits, and that the defendant has not sufficient property subject to execution to answer damages if recovered against him by the plaintiff in suits at law, are conclusions of law, and not such statements of fact as entitle the plaintiff to the relief sought. 4. The contract set out in the complaint made by plaintiff with W. O. Carrier, grants the said Carrier the exclusive right and privilege of soliciting at the Middletown station the patronage of railroad passengers, for the carriage of themselves or their baggage, and mentions as a part of the consideration moving from the said Carrier to the plaintiff whereby said privilege was so granted to him, that he shall and will at his own cost and expense take such proceedings, should any become necessary, in the name of the plaintiff, having first obtained consent in writing of the plaintiff; therefore, the plaintiff having granted this privilege to the said Carrier in consideration that he should take such proceedings as are necessary to enforce his rights and to prevent infringements of said contract, cannot ask for an injunction against this defendant for doing or threatening to do acts that are an infringement upon the rights granted to said Carrier, when by the very allegations of its complaint it sets forth a contract wherein it appears that the plaintiff can compel said Carrier to bring any action necessary for just such infringements of the rights granted him as the alleged trespasses set out in the complaint constitute; or, in other words, by its contract with said Carrier the plaintiff is estopped from asking for the relief sought, at least until it has shown that said Carrier had attempted to enforce it and has failed. 5. The plaintiff has leased the absolute privilege to solicit for passengers, etc., to said Carrier for a valuable con-

sideration, and the acts for which it asks an injunction against the defendant are infringements of said contract and to the damage of said Carrier, but it nowhere appears in said complaint that they work any injury to the plaintiff. The plaintiff gives certain reasons why it made the regulations prohibiting all owners and drivers of public hacks, carriages and express-wagons to ply their business on its station grounds at Middletown except by its permission. These reasons, however, do not constitute a cause of action in themselves, neither does it anywhere appear in the complaint that the alleged trespasses of the defendant in any way were in opposition to or interference with the purposes so alleged. 6. The contract set forth as a part of plaintiff's complaint and for the infringement of which the plaintiff asks an injunction against the defendant, is *ultra vires* and in contravention of public policy, because it attempts to grant to one common carrier of passengers and baggage the right to ply his business at its station in Middletown, to the exclusion of all other common carriers of passengers and baggage. 7. The plaintiff, by selling the privilege to one person to solicit for the carrying of passengers and baggage and only for such prices as are acceptable to the plaintiff, is attempting to compel its passengers to patronize that person and prevent them from employing any other common carrier, which is an attempt to exercise control over the actions of its passengers after it has carried them to their destination and landed them at its station; and such an attempt is manifestly beyond any power vested in them by their charter. 8. The plaintiff by assuming the right to sell the exclusive privilege of soliciting for baggage and passengers at its stations to one common carrier, according to a schedule of prices acceptable to the plaintiff, is establishing a monopoly not granted by its charter, which might be solely for its own benefit, and not only not for the benefit of the public, but to the serious damage and inconvenience of the public."

*Edward D. Robbins* and *Clarence E. Bacon,* for the appellant (plaintiff).

The only question before this court is as to the sufficiency of the demurrer. The plaintiff sues for an injunction to restrain defendant from committing a continuing trespass on its land. There is no thought of preventing the infringement of a contract between the plaintiff and a third party, or of enforcing any privileges granted by plaintiff's charter. The mere fact that land is owned by a corporation instead of an individual, does not alter the nature or extent of the rights incident to ownership. If a corporation has the right to own land, it needs no express grant of the several rights which are included in law under the general term "ownership," and particularly needs no specific grant of the right to exclude any or all persons from entering on such land. It is clearly for the interest of a railroad company to secure a good carriage service at its stations. In New York the companies have even gone so far as to put on attractive carriages of their own, with a much reduced rate of fare. At smaller stations, where such an arrangement would be impracticable, much can nevertheless be done by offering sole privileges on the company's land to some responsible man or company in return for a more satisfactory carriage service. Moreover, it is desirable for the comfort of passengers that they be protected from the annoying importunities of rival hackmen. The right claimed by the plaintiff has been amply sustained by courts of high authority, even against persons who were excluded from the vehicles of common carriers and who claimed to have rights as passengers. *Barney* v. *Oyster Bay, etc., Co.,* 67 N. Y. 301; *Jencks* v. *Coleman,* 2 Sumner, 221; *Flukes* v. *Ga., etc., Co.,* 81 Ga. 461. The precise question now before the court was raised in England forty years ago by the proprietor of an omnibus line whose carriages were excluded by the railway company from its station grounds, in *Barker* v. *Midland Railway Co.,* 18 C. B. 45. This case was in 1897 affirmed by the House of Lords, in *Perth General Station Committee* v. *Ross,* App. Cases (1897), 479. In *Old Colony R. Co.* v. *Tripp,* 147 Mass. 35, the Supreme Court of Massachusetts decided in favor of the railroad company a case almost identical with the one at the bar. See also *Lan-*

*drigan* v. *State*, 31 Ark. 50; *Griswold* v. *Webb*, 16 R. I. 649. The practice of courts of equity to grant an injunction to restrain a continuing trespass is, although of comparatively recent origin, now well established as a means of preventing a multiplicity of suits. An injunction is especially proper as a remedy, where the repeated trespass suits which would otherwise be necessary would be of no avail to the plaintiff on account of the pecuniary irresponsibility of the defendant. Pom. Eq. Juris. § 1357; *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 161; *N. Y. & N. E. R. Co.* v. *Comstock*, 60 id. 200, 214; *Allen* v. *Martin*, L. R. 20 Eq. 462; *Ellis* v. *Wren*, 84 Ky. 254.

*M. Eugene Culver*, for the appellee (defendant).

The mere allegation that the threatened acts of the defendant will result in great damage to the plaintiff, is not sufficient ground for an injunction, but facts should be stated that the court may see how and why it would result, and that the apprehension of irreparable mischief is well founded. There is nothing on the face of the complaint that shows that the defendant committed irreparable mischief, nor that the repetition of such acts as soliciting on the grounds of the plaintiff would be likely to work such mischief that an injunction must be granted. If a railroad company has such an exclusive right to control its station grounds that it can forbid any person to enter thereon, in the same way that a private individual can forbid trespassing on his private property, then it would have been a simple matter for the plaintiff to have forbidden the defendant to come upon its premises and, if he failed to heed the warning, prosecute him. There are, however, several different elements that enter into this case, and tend to make it unlike the instance of the individual owner of private property: *First.* The plaintiff is a public common carrier for hire and holds its land only for specific purposes. *Second.* Its station grounds are not enclosed. *Third.* It has seen fit to make a contract with one common carrier permitting him to solicit for passengers and baggage on its station grounds, but excluding and prohibiting all other

common carriers from doing the same thing. *Fourth.* It makes a contract that may be entirely for its pecuniary advantage and to the damage of the public. *Fifth.* It tends to establish a monopoly. *Sixth.* It attempts to exercise control over its passengers, by virtually giving them no option. They must employ the common carrier it has seen fit to contract with, or do without the services of a carrier. The contract that the plaintiff has entered into and is asking this court to sanction, is in violation of the duty that it owes to its patrons and the public. Ray on Contrl. Lim. 241–256; *Thomas* v. *West Jersey R. Co.*, 101 U. S. 71. This contract is in direct opposition to the spirit of the statute, § 3531, which says: "Every railroad company shall maintain a safe approach for carriages to all its passenger stations from a contiguous or neighboring highway, and shall not permit such approach to be obstructed in any manner for a reasonable time before and after the arrival of every passenger train stopping at such a station." It would be manifestly absurd to say that the legislature took the trouble to enact such a statute, and that any railroad company could nullify it by saying no carriages could come there except with its permission. There have been but few cases like the one at bar decided in this country, but those that are most nearly like it in their facts have been decided against the principle assumed by the plaintiff in this case, namely, the right to let one common carrier solicit for passengers and baggage on its grounds to the exclusion of others. *Kalamazoo, etc., Co.* v. *Sootsma*, 84 Mich. 194; *Montana, etc., Co.*, v. *Langlois*, 9 Mont. 419; *Cravens* v. *Rodgers*, 101 Mo. 247; Ray on Neg. 113–121.

BALDWIN, J. A railroad company which is operating a railroad in its possession has the ordinary right belonging to every owner of real estate to exclude from entry upon it all who come without its consent and can show no superior legal title. A right of entry exists in all who wish to avail themselves of its services as a common carrier and enter for that purpose at a proper place, so long as they conduct themselves with propriety and pay due regard to such reasonable regu-

lations as it may have made and published for the orderly and prudent management of its business. It is for their especial use that it is permitted to maintain its stations and station grounds; and the law establishes a right of entry in their favor, independent of any contractual relation between them and the company.

It appears from the complaint that the plaintiff, by its board of directors, adopted a regulation, excluding from its station grounds all persons who without special permission in writing should come to solicit the carriage of passengers or their luggage. The defendant, knowing the regulation, soon afterwards entered upon its station grounds in Middletown to solicit business of that description, and did solicit it successfully. He has since repeatedly made similar entries for the same purpose, and threatens to continue them daily and many times a day. The plaintiff has been greatly damaged by this course of conduct, but the defendant has not sufficient property subject to execution, to answer in damages, should the plaintiff sue at law. For that reason and to avoid a multiplicity of suits a remedy is sought by injunction.

The main question to be determined is whether the regulation was a reasonable one. It contains two prohibitions: one against soliciting business upon station grounds, and the other against plying there the business of a carrier of passengers or luggage. The former, a violation of which is charged against the defendant, applies to every person, whatever may be his ordinary occupation; the latter only to two classes of carriers.

The extent of the land about a passenger station which may be appropriated as station grounds is determined by the railroad company, with the approval of the proper authorities of the State, in view of the number of those who will probably have lawful occasion to use the station from time to time, and the accommodations necessary for their convenience and for the proper management of the road.

Every one who is driven to a station to take passage on a train can select his own conveyance, but he has no absolute

right to insist on its admission within the station grounds. His driver has no greater right. These grounds may be, and in cities often must be, so cramped as to preclude the entrance of any vehicles so employed. Where the space is greater, the question of admitting them is to be determined wholly by the convenience of the passenger and the railroad company. That of the driver or owner of the vehicle need not be consulted, except so far as it is involved in that of those whom he is carrying to the station.

In regulating matters of this kind, a wide discretion is necessarily entrusted to the managers of the railroad. They are in a situation which should make them the best judges of what promotes the comfort of those who ride upon their road. Courts will always be slow to pronounce unreasonable any rule purporting to be directed towards that end, which they have deliberately adopted.

That now under review cannot fairly be construed to prevent the driver of any vehicle from entering the station grounds of the plaintiff to fulfill a contract of employment with a passenger or intending passenger. It forbids him from entering such grounds to solicit such business, or to ply there the business of a hack driver or baggage expressman. The latter prohibition, when found in a regulation of this nature, cannot be taken to cover the pursuit of such business by the conveyance of a passenger or his luggage in the execution of a lawful contract already made. The word "ply" imports the performance of repeated acts of the same kind. A reference to plying a business at a certain place ordinarily imports that such place is a seat of the business, and such in law is its meaning as used in the rule now in question.

It appears from the complaint that the station grounds at Middletown are sufficiently large to allow the establishment there of a public stand at which to ply the carriage and express business, and also that an exclusive privilege for maintaining such a stand there has been granted by the plaintiff to a third party.

Such a grant was within its lawful powers, provided its terms were not inconsistent with the reasonable accommoda-

tion of the passengers upon its road. Nothing appears on the record to indicate any such inconsistency. It may well be more convenient for them to deal with a single local carrier, than to be met, on alighting from their train, by importunate solicitations from a number of rival competitors for their custom; and in the absence of averments to the contrary, it is to be presumed that the prices at this stand are fair and the service sufficient. If any of them prefer that of some other person, they can secure it by an order in advance, which would justify his entrance on the grounds; or by passing by the stand established there and going into the streets outside, to engage whomsoever they think fit.

It follows that the defendant had no right to enter the Middletown station grounds for the purpose of soliciting business.

It is contended, however, that be this as it may, an injunction was not the proper remedy.

The averments that the defendant had inflicted great damage on the plaintiff, and had not sufficient property, subject to execution, to respond to the judgments, should he be sued at law, were statements and sufficient statements of fact. It would not have been good pleading to set out the evidence which might be adduced in their support. Enough circumstances were elsewhere disclosed to show that the damage might be great from the obstruction caused by the presence of intruders to the expedition of trains and the proper management in general of the plaintiff's business.

A judgment at law, also, would be no guaranty against future trespasses, and it is explicitly alleged that these are contemplated and threatened. Such wrongs in respect to land in the use of which the public interest is involved may be prevented by injunction. *Burlington* v. *Schwarzman*, 52 Conn. 181, 184; *Stamford* v. *Stamford Horse R. Co.*, 56 id. 381, 395.

The action is not barred because Carrier, who holds the exclusive privilege in which the defendant seeks to share, could have brought a similar one or may have brought this one. It is immaterial to the defendant who is paying the

expenses of the litigation or directing its course. He has violated the right of possession which exists in favor of the plaintiff as to its Middletown station grounds, and is answerable to an action in its favor precisely as if its contract with Carrier had never been made. Had Carrier sued at law in the plaintiff's name, the damages recovered would have been those only which had been suffered by the plaintiff. This remedy in equity also stands upon its rights, not his.

The complaint was sufficient if, upon any state of proof which its allegations justified, the court could, in the reasonable exercise of judicial discretion have granted an injunction. Tested by this criterion (and without intending to determine whether one should or should not issue in this cause), the demurrer should have been overruled.

There is error and the judgment of the Superior Court is set aside.

In this opinion the other judges concurred.