## INDIANAPOLIS UNION RAILWAY COMPANY v. DOHN.

[No. 18,531. Filed May 23, 1899.]

CARRIERS.—Contracts.—Monopolies.—Union Railway Company.—A company organized under the act of 1885 for the incorporation of union railway companies (Acts 1885 p. 30), cannot, under its right to make rules and regulations concerning its station and grounds, grant to a transfer company the exclusive right to stand hacks upon its depot grounds and solicit business. pp. 10-14.

MONOPOLIES.—Carriers.—Union Railway Company.—The action of a union railway company granting to a transfer company the exclusive right to stand hacks upon its depot grounds and solicit business tends to restrict competition and to enhance prices, and is therefore against public policy. pp. 10-14.

From the Marion Superior Court. Affirmed.

Baker & Daniels, for appellant.

Schuyler Haas, for appellee.

BAKER, J.—Suit to enjoin appellee from entering upon the station grounds of appellant to solicit customers for his hack. The question arises upon appellant's exception to the conclusion of law upon the facts specially found.

The facts are briefly these: Appellant is a corporation composed of various railway companies, and organized under the act of March 2, 1885. Acts 1885, p. 30, §§5232-5250 Burns 1894, §§3964 a-s Horner 1897. Appellee is the driver of a public conveyance, commonly called a hack, engaged in the business of transporting persons without discrimination from place to place in and about Indianapolis. Appellant owns the union passenger station at Indianapolis. It acquired the ground partly by condemnation and partly by purchase. The station building faces north. The tracks are south of the building under a train-shed. At the north

of the building is an open area, bounded on the north by Jackson Place street, on the east by McCrea street, on the south by the station building, and on the west by Illinois street.   The distance from Jackson Place street to the station building is sixty-seven feet.   Along the north line of the building is a sidewalk sixteen feet wide.   The residue of the area is paved and used as a driveway to and from the entrance, which is at the center of the north front.   This condition has continued ten years.   Appellant by contract undertook to give the Frank Bird Transfer Company the exclusive right to stand hacks on the area and solicit business of persons leaving the station.   Employes of the transfer company were accustomed to stand their hacks upon the area at all hours of day and night and for such length of time as they pleased. Intending passengers were allowed to alight at the entrance of the station building from their private conveyances or from public ones that had been employed to bring them there.   Arriving passengers were permitted to be met at the entrance by their private conveyances or by public ones previously engaged to meet them.   All other vehicles except the transfer company's were excluded from the area.   Appellant has had rules in force to this effect for many years.   The city by ordinance permitted hacks to stand along the west side of McCrea street.   An ordinance forbade hackmen to approach the station building nearer than fifteen feet to solicit business. Appellee, within three weeks before the commencement of this suit, at least a dozen times drove his hack upon the area outside of the sidewalk when he had no passenger to be discharged or to be received, and stayed from half an hour to an hour at a time soliciting business from arriving passengers.   Appellant several times told him that he should leave, that he was violating appellant's rules and regulations, and that he was trespassing on private property.   Appellee each time refused to leave, stating that he had the right to stand his hack on the area so long as the transfer company was permitted to stand its hacks there, and that he intended to con-

tinue to come upon the area so long as the transfer company was given that privilege.

From this finding it does not appear that appellee's conduct was boisterous, or that he was interfering with appellant in the discharge of its duties to the passengers of the proprietary and associate railway companies, or that he was annoying or interfering with the passengers, or that he was refusing to comply with any rule or regulation of appellant's that applied to all hackmen.

Appellant has the undoubted right to make rules and regulations concerning the use of its station and grounds. *Lucas* v. *Herbert*, 148 Ind. 64, 37 L. R. A. 376. The term, rules and regulations, however, implies uniformity in operation, not discrimination for the pecuniary advantage of the promulgator. The question is not what rules, uniform in application and promulgated by appellant impartially in the interests of the traveling public and without a money consideration to itself, might be held reasonable and what unreasonable, but whether appellant may, under the guise of rules, exclude from its station grounds all hackmen but one and thus protect a contract from which it derives a revenue.

A collection of authorities is made in *Lucas* v. *Herbert*, *supra*. To them may be added *In re Palmer and London*, *etc.*, *R. Co.*, L. R. 6 C. P. 194; *Parkinson* v. *Great Western R. Co.*, L. R. 6 C. P. 554; *New York, etc., R. Co.* v. *Scovill*, 71 Conn. 136, 41 Atl. 246, 42 L. R. A. 157; and *State* v. *Reed*, (Miss.) 24 South. 308, 43 L. R. A. 134.

The majority of the English cases appear to sustain, and the majority of the American to deny, the right of a railway company to grant such an exclusive privilege. See the note of Mr. Freeman in 22 Am. St. 699-702, and the note of Mr. Lewis in 5 Am. Railroad & Corp. Rep. pp. 715-724.

In some of the cases constitutional and statutory provisions enter into the determination, but in the main the question is decided from the points of view of the powers of the corporation and of public policy.

Indianapolis Union R. Co. *v.* Dohn.

By the governing act appellant is authorized "to regulate the use of its depots, stations, structures, appliances and facilities." Appellant has only the powers that are expressly granted and those that are necessary to the exercise of express grants. The act is searched in vain for appellant's authority to discriminate. If, under regulations that are uniform and impartial, equality fails by reason of limited facilities, appellant would not be at fault.

Appellant acquired its grounds through the sovereign right of eminent domain, whether by purchase or by condemnation; for it could not obtain a broader right by grant than by force. Taking the land by the right of the State, for the purposes of public business, appellant should not be permitted to grant special privileges and immunities that the State could not.

The city of Indianapolis is given the right to regulate the use of its streets by hacks. The city would hardly undertake to exclude all but one hack from the stand on McCrea street in order to make good a rental for the exclusive privilege. The State entrusted appellant with the right to regulate the use of its facilities, not to increase its revenues by creating a monopoly.

Appellant is chartered to furnish depot and switching facilities to its proprietary and associate companies in connection with the transportation of persons and property on their railroads, not to engage in the hack business upon the streets of Indianapolis. True, appellant only rented its grounds to the transfer company. But the only use of the grounds, of advantage to the transfer company, is to base thereon the use of the streets for revenue. If appellant has authority to grant that advantage to another, it may take it to itself.

The passengers' payment for transportation includes payment for their common use of the station facilities. If they are not entitled to have appellant use those facilities disinterestedly for their advantage, they are at least entitled to

have appellant refrain from coercing them into yielding
further tribute. For, under threat of having otherwise to
leave the grounds, they pay a fare that necessarily includes
appellant's rental. Appellant's action tends to restrict com-
petition and to enhance prices, and is therefore against pub-
lic policy. *Consumers Oil Co. v. Nunnemaker*, 142 Ind.
560.

Appellant sought from a court of equity the extraordinary
remedy of injunction. It has failed to show any ground
for equitable interposition. Judgment affirmed.