BOROUGH OF BELMAR v. THOMAS H. PRIOR.

---

BOROUGH OF BELMAR v. HENRY H. BENNETT.

---

BOROUGH OF BELMAR v. FRANK P. PHILBRICK.

Argued February 27, 1911—Decided June 14, 1911.

A recommendation by the executive committee, which was adopted by the board of directors of the "Ocean Beach Association" chartered by the act of March 13th, 1873 (*Pamph. L., p.* 1089), and entered in its minutes, to the effect that a block of lots be dedicated to public use, is not a "rule or regulation" within the meaning of a restrictive covenant in its deed for one of such lots that the grantee "shall not sell or suffer to be sold on said premises hereby conveyed, spirituous or intoxicating liquors, nor violate any of the provisions contained in said act of incorporation, by-laws, rules or regulations made by the said association at any time," which deed also contained covenants of seizin, of right to convey, of quiet enjoyment, of general warranty and against encumbrances.

---

In ejectment. Defendants' rules to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices REED and TRENCHARD.

For the plaintiff, *Durand, Ivins & Carton* and *Robert H. McCarter.*

For the defendants, *Patterson & Rhome* and *Edmund Wilson.*

The opinion of the court was delivered by

TRENCHARD, J. The borough of Belmar brought these three ejectment suits in the Supreme Court, and they were tried together at the Monmouth Circuit, and resulted in a verdict for the plaintiff in each case. A rule to show cause why the verdict should not be set aside was obtained by the defendant in each case, and by consent have been here argued together.

The actions were brought to recover possession of lands in Belmar, which the defendants had purchased, and of which they were in possession, claiming title by deeds duly recorded. The title of each defendant was traced back to a common source, namely, the Ocean Beach Association, and the plaintiff insisted that such association had dedicated to public use the lands in question.

No doubt, upon the whole case, there was presented a jury question upon the question of dedication, under the authority of *Borough of Belmar* v. *Barnett*, 48 *Vroom* 559. We shall not attempt to refer to all of the testimony which raised such jury question, but confine ourselves to reference to such parts of the evidence as serves to make plain the error which we think occurred at the trial and which necessitates a new trial.

It appeared in the cases at bar that about the year 1873, the Ocean Beach Association, a corporation, acquired a large tract of land of which the *locus in quo* was a part and caused a map to be made of it and filed. All of the land, excepting a tract or "square" adjoining the ocean, and some other small parcels alleged to have been dedicated to public use, but which are not within the present controversy, was divided into blocks and lots and a number given to each lot. The block, or "square," of which the *locus in quo* was a part, was not di-

vided into lots nor marked in any way on the first map, but was shown on it as an open space lying between the Atlantic ocean and Silver lake, and was then largely occupied by an outlet from the lake to the ocean. This outlet was afterwards closed by the association, when it improved Ocean avenue, which had been opened between the ocean and the lake by filling in the outlet with earth. Subsequently, in 1883, when the second map was made and filed, the *locus in quo* was shown thereon as a rectangular figure, but not divided into lots. Still later, in 1895, when a third map was made and filed, this rectangular figure was shown thereon divided into lots, and each lot numbered. This block was never sold by the association, but after all the remaining lots had been disposed of, it was divided into lots as stated, and such lots were separately conveyed by the corporation, one to each of the stockholders thereof. The respective defendants in these present suits claim title through intermediate deeds from some one of the such original grantees of the association, as was the case in *Borough of Belmar* v. *Barnett, supra.* Each deed executed by the association to such original grantees contained covenants of seizin, of right to convey, of quiet enjoyment, of general warranty and against encumbrances, and by its terms was made subject to a restrictive covenant that "the said party of the second part, his heirs and assigns, shall not sell or suffer to be sold on the said premises hereby conveyed, any spirituous or intoxicating liquors, nor violate any of the provisions contained in said act of incorporation, by-laws, rules or regulations made by the said association at any time."

When the work of filling in the lands, of which the lots in question were a part, was undertaken by the association, the work was entrusted to its executive committee, and this committee, on September 2d, 1881, made a report and recommendation to the board of directors as follows:

"We also recommend that the finish at the end of the lake be a square of three hundred feet in Ocean avenue, by two hundred feet west, and that it be so finished at the earliest convenient time and so entered upon our map."

It is contended that this recommendation was adopted by the board and entered in the minutes.

At the trial, that "minute" was admitted in evidence over the objection of the defendants. The plaintiff insisted that the covenant in the original deeds that the grantees therein should not violate any of the provisions contained in the "by-laws, rules or regulations" made by the association at any time put every purchaser in line of title (including these defendants) upon constructive notice that he was buying subject to "rules or regulations" made by the association, and that the "minute" in question was such a "rule or regulation."

The learned trial judge, after instructing the jury that the defendants were not bound by any dedication unless they had notice of it, further instructed them in effect that the defendants bought subject to "rules and regulations" of the association and must take notice of any such as were discoverable by reasonable effort. He then, in effect, charged the jury that it was for them to determine whether the "minute" of the board of directors respecting the lands in question was such a "rule or regulation," and whether it dedicated the lands to public use.

We think it was erroneous to thus permit the jury to determine, as we may assume that they did from their verdict, that the "minute" was either a "rule" or a "regulation," within the meaning of the words "rules or regulations," as used in the deed. We have pointed out that the deed in which they were used contained covenants of seizin, of right to convey, of quiet enjoyment, of general warranty and against encumbrances. Of course, these covenants should be considered in connection with the language of the restrictive covenant in determining what was meant by the grantor in the use of the words "rules or regulations." *Hemsley* v. *Marlborough Hotel Co.,* 17 *Dick. Ch. Rep.* 164. Considered in the light of these covenants, and in view of the land development scheme of the association as disclosed by its charter (*Pamph. L.* 1873, *p.* 1089), to which reference was made in the deed, the meaning of the words "rules or regulations" is quite clear. "A rule is

a device in words and phrases for the control and direction of those who have something else given them to do." *Taylor* v. *Lambertville,* 16 *Stew. Eq.* 107, 112. A regulation is defined to be "a rule of law by which some right is to be exercised." *Donovan* v. *Territory,* 3 *Wyo.* 91, 94. They are words of like import (*Taylor* v. *Lambertville, supra*), and import a partial restriction which does not wholly prohibit (*Richards* v. *Bayonne,* 32 *Vroom* 496, 498) and imply uniformity in operation, not discrimination. *Indianapolis Union Railway Co.* v. *Dohn,* 153 *Ind.* 10; 45 *L. R. A.* 427. Clearly, therefore, when, as in this case, they are used in connection with the exploitation of a land scheme they imply—first, universality of application and uniformity in operation, and secondly, some legitimate use or occupation of the land for the "rule or regulation" to operate upon by persons who acquired such use or occupation from the source which created the "rule or regulation." It follows that a "minute," the effect of which is to deny use or occupation of the lots to the association's grantees, could not be classified as either a "rule" or a "regulation." If the "minute" in question in this case had any effect at all, its effect was to dedicate the single block of land to public use and it lacked the qualities mentioned of a "rule" or "regulation." Our conclusion therefore is that the "minute" should have been construed to be not a "rule or regulation" within the meaning of the words as used in the deed, and that this question of construction was for the court (11 *Cyc.* 1181) and should not have been submitted to the jury.

Because of this erroneous instruction each rule to show cause will be made absolute.