## DETERMINED BY THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA:

---

## CHARLESTON

Rose v. Public Service Commission.

Submitted September 22, 1914.   Decided September 29, 1914.

1.  CARRIERS—*Exclusive Privilege—Local Transfer Company.*
   A railway company is not prohibited by sections 7, 8, and 9, chapter 9, Acts 1913, or by any rule or principle of the common law from granting to a local transfer company, in good faith and for public convenience, the exclusive privilege of occupying a portion of its station platform and ground for the purpose of soliciting patronage in the business of transferring through passengers and baggage, arriving on its trains, to the station of another railway company.   The rights of a competing transfer company are not thereby violated.  (p. 4).

2.  STATUTES—*Statute Adopted from Another State—Construction.*
   When a statute has been adopted from another state or country, the courts usually follow the construction which it had received by the courts of the state or country from which it is taken.  (p. 4).

Petition by William Rose, doing business as the Rose Transfer Company, filed before the Public Service Commission, complaining of the Chesapeake & Ohio Railway Company, a corporation, and another, and praying for certain relief.   Petition dismissed, and petitioner seeks an order of reversal.

*Order refused.*

*Daugherty & Riggs,* for petitioner.

*Enslow, Fitzpatrick, Alderson & Baker, A. A. Lilly,* Attorney General, and *Frank Lively,* Assistant Attorney General, for respondents.

WILLIAMS, JUDGE:

William Rose, doing business as the Rose Transfer Company, filed his petition before the public service commission complaining against the Chesapeake & Ohio Railway Company, a corporation, and the Union Transfer & Storage Company, also a corporation, alleging that said railway company had violated the laws of the state by extending to the Union Transfer Company the exclusive privilege of occupying a certain portion of its ground adjacent to its station in the city of Huntington for the purpose of soliciting patronage from persons arriving on said railway company's trains, complainant and said Union Transfer Company being competitors in the business of hauling passengers and baggage from said station to their places of destination in the city, and transferring through passengers and baggage from said station to the station of the Baltimore & Ohio Railroad Company situate in another part of the city. Petitioner avers that the Union Transfer Company enjoys said special and exclusive privilege by virtue of a contract between it and the Chesapeake & Ohio Railway Company, which it alleges is in violation of law, and he prays that the contract be concelled and that he be admitted to equal privileges with the Union Transfer Company in the use and enjoyment of the railway company's station platform and grounds.

The cause was regularly heard upon pleadings, agreed statement of facts and argument of counsel, and on the 3rd day of June, 1914, an order was entered denying petitioner relief and dismissing his petition, and he now petitions this Court to review and reverse that order. It appears from the agreed facts that the Chesapeake & Ohio Railway Company owns in fee a square of ground adjoining its station near the point where passengers alight from its trains, which it has paved; that it has given to the Union Transfer Company the exclusive right to occupy this piece of ground with its

cabs for the purpose of soliciting passengers and baggage; that petitioner and all other persons have equal right to drive upon this ground for the purpose. of delivering passengers and baggage, but that all persons, except the Union Transfer Company, are denied the right of remaining there for the purpose of soliciting patronage; that there are other ways of approach to the station for receiving and delivering passengers and baggage, not so convenient, which all persons are permitted to use. The contract between the Chesapeake & Ohio Railway Company and the Union Transfer Company gives said transfer company the exculsive privilege of transferring through passengers and baggage from the Chesapeake & Ohio Railway Company's station to the Baltimore & Ohio Railroad Company's station, and the "exclusive privilege of soliciting passengers and baggage on the passenger station platform." The railroad company agrees to pay the said transfer company twenty-five cents for each adult through passenger, twelve and one-half cents for each half fare passenger transferred from its station to the Baltimore & Ohio station, and fifteen cents for each piece of through baggage so transferred. Monthly settlements are provided for. The transfer company agrees to maintain suitable conveyances and have them ready to meet all passenger trains, and properly transfer through passengers and baggage to the Baltimore & Ohio station. It also agrees to indemnify the railway company against all claims that may arise on account of any loss, damage or delay to baggage, or on account of personal injury or death to passengers, while in the possession or under the control of said transfer company. Passenger transfers are to be evidenced by coupons issued by the railway company and collected by the transfer company from the passenger, and baggage transfers by duplicate transfer baggage way bills of the railway company which shall accompany the baggage upon delivery to the transfer company, and retained by it until the end of each month, when settlement is to be made. The contract is unlimited in duration, and reserves the right to either party to terminate it upon thirty days notice. Whether the railway company

profits by the arrangement does not appear, nor do we think that point is material.

Petitioner insists that the agreement is an unlawful discrimination against him and in favor of the Union Transfer & Storage Company, and that it violates sections 7, 8, and 9 of chapter 9, Acts 1913. A casual reading of sections 8 and 9 will indicate that neither of them apply to the case in hand. Section 8 deals with the connecting lines of railroads and prescribes their duties to each other in respect to mutual service, and division of rates. Section 9 is on the subject of changing the rates, fares and charges of public service corporations, and prescribes what is necessary to be done before such changes can be made. If section 7 does not apply to the case, then there is no statute law of the State on the subject. That section is as follows: "It shall be unlawful for any public service corporation subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular character of traffic or service, in any respect whatsoever, or to subject any particular person, firm, corporation, company or locality, or any particular character of traffic or service, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

An act, in almost the identical language of our statute, was passed in Virginia in 1867, and has been in force in that state until the present time. It seems to have been copied by the state from an English act, 17 and 18 Victoria, Ch. 31, passed in 1854. All courts recognize the rule that when a state copies a statute from another state or country, it adopts also the construction put upon that statute by the courts of that country. Before the statute was adoped by the legislature of Virginia it had been decided several times, by the courts of England, that it did not apply to a case like the one we now have in hand; and the supreme court of Virginia has decided, in the comparatively recent case of *Norfolk & Western Ry. Co.* v. *Old Dominion Baggage Co.*. 99 Va. 111, 37 S. E. 784, that the statute did not prohibit a railway company from giving to a local transfer company

such an exclusive privilege as is here complained of. The facts in that case were almost identical with the facts in this case, and the complaint was the same, except that it was there made to a court of equity on application for an injunction, while here it is made to the public service commission. So we have the construction placed upon the statute by both the courts of England and the highest court of Virginia, before its adoption by this State; and, following the rule above anounced respecting the effect to be given those decisions in construing the statute, we are bound to hold that it was not intended to apply to such a case as the one in hand. The English decisions on the point will be found collated in the opinion of Judge Harrison in the Virginia case above cited.

The next question is, does the common law prohibit a railroad company from granting such exclusive privilege to a local transfer company? We do not think so. We are aware that the courts of some of the states have held that it does, that the granting of such special privilege is ultra vires and creates an unlawful discrimination. Some of the cases so holding are the following: *Pennsylvania Co.* v. *City of Chicago,* 181 Ill. 289, 54 N. E. 825; *Indianapolis Union Ry. Co.* v. *Dohn,* 153 Ind. 10, 53 N. E. 937; and *Cravens* v. *Rodgers,* 101 Mo. 253, 14 S. W. 106. The better considered cases however, if not the greater number, hold that a railway company, acting in good faith and for the purpose of serving the traveling public, may grant to a local transfer company the exclusive privilege of occupying a portion of its station platform or grounds to solicit patronage. Without attempting to collate all the authorities, pro and con on the subject, we refer to the case of *Kates* v. *Atlantic Baggage and Cab Co.,* 107 Ga. 636, 34 S. E. 372, as containing a very able and convincing discussion of the subject, and deciding, on principles of the common law, that such exclusive privilege by a railway company to a local transfer company is lawful. The point is also thoroughly and ably discussed in an opinion by Mr. Justice Harlan, in *Donavan* v. *Pennsylvania Co.,* 199 U. S. 279, in whach a similar decision is rendered by an unanimous court. From his opinion we quote the

following: "It (the railway company) is required, under all circumstances, to do what may be reasonably necessary and suitable for the accommodation of passengers and shippers. But it is under no obligation to refrain from using its property to the best advantage of the public and of itself. It is not bound to so use its property that others, having no business with it, may make profit to themselves. Its property is to be deemed, in every legal sense, private property as between it and those of the general public who have no occasion to use it for purposes of transportation." The exclusive privilege here extended by the railway company to the Union Transfer Company does not deny to petitioner any right or privilege which he is entitled to demand of the railway company in respect to any service that it is bound, as a public service corporation, to render to shippers and the traveling public in equal measure. His complaint is not that of a patron of the railway company. He seeks to use the railway company's property to further his own private business, and the railway company owes him no duty in that particular. As between him and it, the railway company's property is strictly private, except in the use he is entitled to make of it in transporting himself and his property, or the persons and property of others in his care, *W. U. Tel. Co.* v. *Pa. R. R. Co.*, 195 U. S. 312, and no privilege is denied him in respect to those rights. Such agreements as the one in question are not novel, they exist in many places and are intended to benefit the public. In the present case it appears that, when the traveler buys his ticket from the railway company, there is included in the fare the cost of the transfer across the city of himself and baggage, and he knows he will be put to no further expense. He is not subjected to the care and trouble of selecting a conveyance from among the numerous cabmen eager to serve him and clamoring for his patronage when he alights from the train. Those who have traveled will recall how confusing and annoying it was to them the first time they alighted from a train in a strange city and were confronted with numerous cab drivers, all clamoring for patronage.

The order is refused.

*Order refused.*