(C. D. 1092)

W. C. HARDESTY CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 19, 1948)

*William S. Armstrong* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Guy Gilbert Ribaudo*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: In this case plaintiff seeks refund as drawback under section 313 of the Tariff Act of 1930 of 99 per centum of the duties paid on the importation of certain material used in the United States in the manufacture of stearic acid and oleic acid which was subsequently exported from the United States.

None of the facts of importation, manufacture, and exportation are in dispute, the issue being limited to the question of whether there was on the part of the plaintiff compliance with the customs regulations prescribed by the Secretary of the Treasury under the authority of section 313 (i) of the tariff act with respect to the giving of timely notice of intent to export with benefit of drawback.

Section 22.7 of the Customs Regulations of 1943, which had been promulgated at the time the merchandise in question was exported, so far as pertinent, reads as follows:

22.7 *Notice of intent to export; local or direct shipments from a seaboard or frontier port.*—(a) At least 6 hours, but not more than 90 days, before the lading of merchandise which is to be exported from a seaboard or frontier port as a local or direct shipment therefrom, the drawback claimant or his agent shall file with the collector of customs at such port a notice of intent to export on customs Form 7511 in duplicate. A copy of the notice of intent shall also be delivered to the customs officer in charge at the place of lading at the time the merchandise is delivered to the exporting carrier. Such notices of intent shall show the name of the exporting vessel or other carrier, the place of lading, the kind of packages and their marks and numbers, the description of the merchandise, and its weight (gross and net), gauge, measure, or number. If the merchandise is to be exported in railroad cars, notice of intent shall be filed for each car.

\*     \*     \*     \*     ·     \*     \*     \*

(d) A failure to file a notice of intent with the collector, or a failure to deliver a copy to the customs officer at the place of lading shall not bar the allowance of drawback if either of such requirements of paragraph (a) was complied with and no other act or omission of the exporter, carrier, or agent of either resulted in a failure to obtain customs inspection. If neither a notice of intent was so filed nor a copy was so delivered, drawback shall be allowed on the involved merchandise only if specifically authorized by the Bureau.

(e) When merchandise is to be exported otherwise than by sea and drawback will be claimed, the carrier shall notify the proper customs officer at the port of exit of the arrival and point of departure of the merchandise before it leaves the United States. If such notice was not given and there was no customs inspection of the shipment for drawback purposes, drawback shall not be allowed.

Section 22.15 of the same regulations, likewise promulgated at the time of exportation of the merchandise involved, reads as follows:

22.15 *Failure to obtain inspection and supervision of lading.*—Whenever the inspecting officer is unable to certify to the inspection and supervision of lading of the merchandise covered by a notice of intent, he shall examine the records of the delivering and exporting carriers for the purpose of verifying the particulars stated in the notice of intent and make his certificate accordingly, whether or not the notice of intent was timely. In such cases the certificate of the inspector shall be accepted as sufficient evidence of lading and the drawback shall be al-

lowed, provided the notice of intent was timely, the regulations were otherwise complied with, and the failure to inspect was not the fault of the exporter, the carrier, or an agent of either.

The record consists of a stipulation of counsel in effect limiting the issue as hereinbefore stated, and certain documentary evidence to which reference will be made.

From a copy of the bill of lading found with the drawback entry papers it appears that the merchandise was received by the exporting carrier at Dover, Ohio, on December 21, 1945, for shipment to Canada through the port of Port Huron, Mich. Upon the face of the copy of the bill of lading appears the following:

NOTICE: THIS SHIPMENT IS SUBJECT TO DRAWBACK PRIVILEGES AND MUST BE HELD AT BORDER FOR CUSTOMS INSPECTION. FOLLOWING PAPERS ATTACHED:
                              NOTICE OF INTENT
                              INEDIBLE CERTIFICATE
                              EXPORT PAPERS

The record establishes that on December 19, 1945, a notice of intent was mailed by the customs broker of the plaintiff in New York, addressed under registry, to the collector of customs at Port Huron, Mich. Apparently only one copy of the notice of intent was sent in that letter—at least, the record does not disclose otherwise.

The registered letter was received in the Port Huron post office at 6 p. m. on December 21, 1945, a Friday evening. Probably for the reason that customs offices are not open for business on Saturdays and Sundays (section 1.8, Customs Regulations of 1943), the letter was not delivered to the customhouse until Monday, December 24, but the record does not disclose the time of day when that was done.

The notice of intent was forwarded by the collector to the inspector in charge at the place of lading stated therein, but did not reach that officer until 8 a. m. on December 26, 1945. He reported that the merchandise had been laden for export on December 24, 1945, at 8 a. m., and had not been inspected for the reason that no notice of intent to export with benefit of drawback had been received at that time.

It will be noted that two methods of notifying the customs officers of the intention to export merchandise for benefit of drawback are provided in the regulations. One is the filing of notice with the collector of customs at least 6 hours before the lading of the merchandise; the other is by the delivery of a copy of such notice to the customs officer in charge at the place of lading. Although section 22.7 (a) requires the filing of notice with the collector and the delivery of a copy to the lading inspector, section 22.7 (d), in effect, modifies this by making filing or delivery to either the collector or the lading inspector sufficient,

provided there was no other departure from the regulations. The last sentence of section 22.7 (*d*) provides that—

If neither a notice of intent was so filed nor a copy was so delivered, drawback shall be allowed on the involved merchandise only if specifically authorized by the Bureau.

Apparently the circumstances of this case did not suggest themselves to the Bureau as an instance of the proper application of the power purportedly given to it of dispensing with the ordinary requirement of notice.

Considering the case on the merits, we may say at the outset that it presents an extraordinary situation in that while the plaintiff did what would appear to be everything it could do on its part to comply with the customs regulations with respect to notifying the collector of the intent to export merchandise with benefit of drawback, and to secure inspection of the shipment prior to exportation, a combination of circumstances prevented the inspection from taking place. The notice of intent was received in the post office which serves the collector's office at Port Huron more than 2 days before the merchandise was exported. The delay in delivery of the notice to the collector's office was not due to any fault or omission on the part of the plaintiff, nor, in justice, was it due to any fault or omission on the part of the customs officers.

The two-day period intervening between the receipt of the letter containing the notice in the post office and the exportation of the merchandise covered a Saturday and a Sunday. We are heartily in accord with the spirit and purpose of the provisions of law confining the regular workweek of Government officers and employees to 40 hours, and requiring such workweek to be performed within a period of not more than six of any seven consecutive days.

However, the regulations with respect to notice of intent in case of exportations made with benefit of drawback make time, measured in hours, a vital factor. The notice must be filed at least 6 hours before the merchandise is laden for exportation. A regulation which requires the filing of such a notice certainly contemplates that reasonable access to the place where such notice must be filed will be given, or, in the absence of access, where the time can be established when the notice would have been presented for filing but for the fact that the office was closed, that the notice will be accepted or deemed or considered as filed at such time. Here, for more than 2 days there was no such access, and any holding that the notice was untimely would, in effect, abridge the rights of claimants for drawback under the regulation by further restricting the time limit specified therein to the last business day before exportation. We do not believe that that was the intention with which the regulation was prescribed.

We do not mean to be understood as suggesting that customs offices should be held open 24 hours a day, 7 days a week, on the chance that someone might wish to file a notice of intent within the limit of time set by the regulation, i. e., 6 hours before the merchandise is laden for exportation. It is a well-known fact, however, that exportation, as well as importation, of merchandise may take place at any hour of the day or night, and that the customs service does not cease to function merely because the business office of the collector is closed for the day. In this case it plainly appears that had there been access to the collector's office the notice of intent would have been delivered on Saturday morning, December 22, well within the limit set by the regulations for timely notice. Under these circumstances, we are of the opinion that the notice was not untimely, and that the requirement of the regulations was met.

There is still another reason why we believe the plaintiff in this case is entitled to recover. This concerns itself with the character of the regulations prescribed with respect to the filing of the notice of intent to export with benefit of drawback. Regulations which were the precedents of those here in issue have long been held to be mandatory in character, requiring strict compliance therewith in order to obtain the benefits granted by the law. *United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. 192, C. A. D. 191, and cases therein cited.

Those regulations, however, did not contain a very important provision found in the regulations here in question, that is, the reservation found in section 22.7 (*d*) conferring upon the Bureau of Customs the power to authorize the allowance of drawback in cases where neither a notice of intent was filed with the collector nor a copy delivered to the customs officer in charge at the place of lading. The significance of this reservation lies in the fact that it thereby becomes apparent that the requirement of filing a notice of intent with the collector and/or of delivering a copy thereof to the lading officer may be dispensed with in certain cases in the discretion of the Bureau of Customs. If this is so, then the requirements as to filing and/or delivering a notice of intent are not placed upon all claimants for drawback, but only on some, and hence are not mandatory, from which it follows that they are not conditions precedent to the right to recover drawback.

It is of the very essence of regulations, and particularly, it would seem, those which fall into the category of mandatory regulations, that they be uniform in their operation and binding upon all. In *American Sugar Refining Co.* v. *United States*, 1 Ct. Cust. Appls. 228, T. D. 31273, certain regulations had been prescribed respecting the testing of imported sugar. The results of tests made in accordance with the regulations were disregarded by the customs officials in the

case of the sugar there in question, and other tests were made which resulted in classification of the sugar at a higher rate than would have been the case had the results of the prescribed tests been used.

In holding that the sugar should be classified for duty upon the basis of the tests prescribed in the regulations, the court pointed out that the regulations were general as applying to all importers and customs officials and were not merely instructions or orders for the guidance of customs officers which might be abrogated or changed or disregarded at the option of such officers.

An enlightening summary of the law on this subject is well-stated in the section devoted to customs regulations and their effect found in 25 C. J. S., § 78 (c), reading in part as follows:

> In general valid regulations duly issued by the secretary of the treasury under authority duly vested in him have the force and effect of law, and are not to be waived by customs officers or to be followed at discretion, but are uniform in their application and binding alike on importers and treasury officials. Some regulations are, however, merely directory and need not be followed strictly.

This distinction between the uniformity of operation of a mandatory regulation as distinguished from those which are directory or of the nature of directory regulations has been generally recognized in all jurisdictions in which the issue has been raised. In *Union Towel Supply Co.* v. *Mayor and Aldermen of Jersey City et al.*, 99 N. J. L. 52, 123 A. 254, the defendants passed an ordinance permitting a brewing company to construct and maintain a platform in front of its ice factory and encroaching on the street. The prosecutor's place of business fronted on the same street. It was urged by the defendants that the ordinance was a proper exercise of the grant in the city charter giving the city authorities power to "regulate the use of the city streets." In holding that the ordinance was not a proper exercise of such power, the Supreme Court of New Jersey said:

> Nor should it be overlooked that the *modus operandi* of the power to regulate consists not in the arbitrary selection of particular individuals or properties for specific adjustment or treatment, in view of their peculiar business requirements, but in the application, by ordinance, of a general or universal rule of conduct applicable to all alike within the municipal jurisdiction, and to which all may revert or conform when the necessity may present itself. 2 Bouv. Law Dict. 863 (Rawles 1st Revision).

In another New Jersey case, *Borough of Belmar* v. *Prior*, 81 N. J. L. 254, 79 A. 1032, the term "regulation" was defined in the following manner:

> "A rule is a device in words and phrases for the control and direction of those who have something else given to them to do." (*Taylor* v. *Lambertville*, 43 N. J. Eq. 107, 112, 10 Atl. 809, 811.) A regulation is defined to be a "rule of law by which some right is to be exercised." *Donovan* v. *Territory*, 3 Wyo. 91, 94, 2 Pac. 532, 533. They are words of like import (*Taylor* v. *Lambertville*, 43 N. J. Eq. 107, 112, 10 Atl. 809) and import a partial restriction which does not wholly prohibit (*Richards* v. *Bayonne*, 61 N. J. Law, 496, 498, 39 Atl. 708), and imply uniformity

in operation, not discrimination. *Indianapolis Union Ry. Co.* v. *Donn*, 153 Ind. 10, 53 N. E. 937, 45 L. R. A. 427, 74 Am. St. Rep. 274.

It is the lack of uniformity in operation and the possibility of discrimination which prevents the section of the customs regulations in question from being mandatory. Certain standards of conduct are set up, but they are not applicable to all claimants for drawback alike, and the regulation reserves to the administrative authority the power to set up other standards, or, indeed, no standards, to govern the conduct of some claimants for drawback.

If the provisions for notice of intent contained in section 22.7 are valid at all, therefore, they are only as directory regulations for the guidance of customs officers and others concerned, and it is well-settled that such directory regulations do not have the force and effect of law, that compliance therewith is not a condition precedent to recovery, and that proof of the matters therein sought to be regulated may be made in some other manner than as prescribed therein. *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 432, T. D. 40611, and *Spencer, Kellogg & Sons (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459. See also the section cited above on customs regulations found in 25 C. J. S., §78 (c), wherein the following is said:

\* \* \* Where the mode of proof prescribed by regulation is invalid, it is not only permissible for the importers to make such proof in some other manner but it is incumbent upon them to establish by competent evidence that the merchandise meets the statutory description.

As has been hereinbefore noted, the facts of importation, manufacture, and exportation of the merchandise in question, are not in dispute. Judgment will therefore issue sustaining the protest claim for the allowance of drawback, and directing the collector of customs to reliquidate the drawback entry accordingly.